Robert G. WARREN, Robert Warren, Jr. and Cynthia Aeschlimann, Plaintiffs,

v.

HONDA MOTOR COMPANY, LTD., a Japanese corporation, Honda Research and Development Company, Ltd., a Japanese corporation, American Honda Motor Company, Inc., a California corporation, and Does 1 through 50, incl., Defendants.

Civ. No. C–85–1053J.

United States District Court, D. Utah, C.D.

April 9, 1987.

---

Roy M. Schank, Ogden, Utah, Robert N. Pafundi, Westlake Village, Cal., Stephen G. Morgan, Salt Lake City, Utah, for plaintiffs.

Robert D. Maack, & Debra J. Moore, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

This is a products liability action seeking damages for the wrongful death of Maxine Warren, allegedly resulting from an accident on a Honda all-terrain cycle ("ATC"). Mrs. Warren's survivors seek recovery from defendants Honda Motor Company (Honda or Honda Motor), Honda Research and Development Company (Honda R & D) and American Honda Motor Company (American Honda). Honda R & D has moved to dismiss the complaint against Honda R & D for lack of personal jurisdiction.

Honda R & D is a Japanese corporation with offices in Saitama, Japan. Prior to 1960, Honda R & D was a division of Honda Motor, designing the vehicles manufactured by Honda Motor. In 1960, the R & D division of Honda Motor became Honda R & D, an autonomous, wholly owned subsidiary of the parent, Honda Motor. Honda R & D continues to design the vehicles for Honda Motor and only for Honda Motor. Honda R & D, however, does not manufacture or sell Honda products. Furthermore, Honda R & D is not licensed to do business in Utah and does not conduct any business directly in the state of Utah. Based on these facts, Honda R & D has moved to dismiss the complaint for lack of personal jurisdiction.

This is the second time the court has considered jurisdiction over Honda R & D. The court denied the defendant's first motion to dismiss to allow time for plaintiffs to discover additional jurisdictional facts. The court heard argument on defendant's renewed motion to dismiss on March 13, 1987 and took the matter under advisement.

Determination of whether the court can exercise jurisdiction over Honda R & D involves two-steps. First, the court must determine whether jurisdiction is proper under the Utah long-arm statute, Utah Code Ann. § 78-27-24 (Supp.1986); *Yarbrough v. Elmer Bunker & Assoc.*, 669 F.2d 614 (10th Cir.1982); *Brown v. Washoe*

*Housing Authority*, 625 F.Supp. 595, 598 (D.Utah 1985). If jurisdiction is proper under the state law, the court must then determine whether the exercise of jurisdiction is consistent with the due process requirements of the United States Constitution.

The Utah long-arm statute provides:

Any person, ... whether or not a citizen or a resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state;

...

(3) the causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. § 78–27–24.

The Utah legislature intended the long-arm statute to apply "to the fullest extent permitted by the due process clause of the Fourteenth Amendment." *Id.* at § 78–27–22 (1977). In general, the Utah Supreme court has interpreted this grant of jurisdiction broadly, following the due process analysis under the federal constitution.[1] *See Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985). Thus the inquiry here is whether Honda R & D has sufficient minimum contacts with Utah so that the maintenance of the action does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

It is Honda R & D's position that it has no contacts with Utah and that jurisdiction is not proper. In support of this position, Honda R & D refers to two other cases involving the same defendants. In one, Honda R & D was dismissed for lack of personal jurisdiction and, in the other, the magistrate recommended that Honda R & D be dismissed.

*State ex rel Honda Research & Development Co. v. Adolf*, 718 S.W.2d 550 (Mo. App.1986), was a mandamus proceeding arising out of personal injury action brought by an individual injured on an ATC. The plaintiff sued Honda Motor, American Honda and Honda R & D. The Missouri Court of Appeals issued a writ of mandamus to the trial court directing it to withdraw its order denying Honda R & D's motion to dismiss for lack of personal jurisdiction. The court reasoned that "[t]he mere designing of a product which is marketed in a forum state cannot be interpreted to mean that the designer availed itself of the privilege of doing business in that state if there are no other even minimum contacts upon which to base jurisdiction."

A second case considering jurisdiction over Honda R & D is pending in this district. *Kloepfer v. Honda Motor Co.*, slip op., 85C–1176S (D.Utah, Feb. 18, 1987). Like the present case, *Kloepfer* involved a Honda ATC accident and is against the same defendants. In *Kloepfer*, the magistrate adopted the reasoning in *Adolf* and recommended dismissing Honda R & D from the action.[2]

Both *Adolf* and *Kloepfer* conclude that jurisdiction over Honda R & D was improper for lack of contacts in the forum state.

---

**1.** *Compare Brown v. Washoe Housing Authority*, 625 F.Supp. 595, 598 n. 3 (D.Utah 1985) (suggesting that the statute and due process considerations are not coterminous except when the case falls within one of the specific jurisdictional categories indicated in the statute); *with American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449 (10th Cir.1983) (implying that the reach of jurisdiction under the Utah long-arm statute is coextensive with the reach of jurisdiction under the due process clause).

Because this case falls within the statute's categories, *cf. Mack Financial Corp. v. Nev. Mo-*

*tor Rentals, Inc.*, 529 P.2d 429 (Utah 1974); *Smith v. York Food Machinery Co.*, 81 Wash.2d 719, 504 P.2d 782 (1972), this court does not need to decide whether jurisdiction under the Utah long-arm statute is coterminous with due process in all instances. The constitutional due process analysis clearly applies to a case within the statute's specified categories.

**2.** The plaintiff has objected to the report and recommendation of the magistrate to dismiss Honda R & D. A final decision has not been reached in that case.

In *Adolf,* the court noted that Honda R & D did not manufacture, sell, distribute or market any product in the forum state. *Adolf,* 718 S.W.2d at 551. *Kloepfer* noted that Honda R & D had no offices, employees, property, bank accounts, telephone listings or business operations in the forum state. *Kloepfer,* slip. op. at 2. Neither court, however, analyzed the relationship between Honda Motor and Honda R & D to determine if that relationship was a contact relevant to the jurisdictional question. Plaintiffs here ask the court to consider that relationship.

Plaintiffs characterize the relationship between Honda Motor and Honda R & D as a quasi-agency relationship, citing *Seqil v. Gloria Marshall Management Co., Inc.,* 568 F.Supp. 915, 917 (D.Utah 1983) (activities performed on behalf of a non-resident defendant by its agent within the forum may be used to establish jurisdiction) and *Engineered Sports Products v. Brunswick Corp.,* 362 F.Supp. 722 (D.Utah 1973) (evidence of quasi-agency relationship between non-resident and resident corporations is sufficient to support in personam jurisdiction over a foreign corporation). Thus, plaintiffs argue, the activities performed in the forum by Honda Motor and American Honda (the agents) that benefit Honda R & D (the principal) may be used to establish jurisdiction over Honda R & D.

Relying on cases like *Como v. Commerce Oil Co.,* 607 F.Supp. 335, 340 (S.D.N.Y.1985) (requiring the non-resident principal to exercise some control over its agent within the forum to establish jurisdiction over the principal), Honda R & D claims that the record does not demonstrate the required showing of control by the principal over the agent necessary to support plaintiffs' claim of agency or quasi-agency between Honda and Honda R & D. Honda R & D also argues that there is a presumption of corporate separateness that further requires plaintiffs to demonstrate the appropriateness of piercing the corporate veil in order to establish jurisdiction over an affiliated corporation, citing *Wehner v. Syntex Agribusiness, Inc.,* 616 F.Supp. 27, 29 (E.D.Mo.1985) (presumption of corporate separateness remains intact unless facts

demonstrate that subsidiary is only a shell of the parent).

Neither the plaintiffs' nor the defendant's test for jurisdiction over an affiliated corporation is entirely correct. Theories of agency or piercing the corporate veil are corporate law theories that do not necessarily apply in a jurisdictional inquiry. *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483 (D.Kan.1978); *Brunswick Corp. v. Suzuki Motor Co.,* 575 F.Supp. 1412 (E.D.Wis.1983); *Hoffman v. United Telecommunications, Inc.,* 575 F.Supp. 1463 (D.Kan.1983). While such a test may be appropriate under a state statute requiring a non-resident defendant to be "present" or "doing business" in the forum state, *e.g., Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373 (10th Cir.1980) (applying the Oklahoma long-arm statute), it is not a necessary analysis under the Utah long-arm statute or under the constitutional due process standards of *International Shoe. E.g., Energy Reserves,* 460 F.Supp. at 490.

In *Energy Reserves,* the plaintiff sought a declaratory judgment for breach of contract. Both defendants were Nevada corporations. The parent corporation, Superior Oil, had its principal place of business in Texas and did substantial business in Kansas. Its wholly owned subsidiary, Superior Overseas, had its principal place of business in London, England. Superior Overseas, the subsidiary, moved to dismiss the action against it for lack of jurisdiction. The plaintiff in that case urged the court to pierce the corporate veil between the two affiliated defendant corporations, thus exercising jurisdiction over the absent subsidiary organization. Defendants responded that the corporations scrupulously maintained their separate corporate identities and that there were no facts supporting a finding necessary to pierce the corporate veil. Further, Superior Overseas argued that it lacked any physical contacts with the forum sufficient to render jurisdiction.

In denying Superior Overseas' motion to dismiss, Judge Theis of the United States District Court for the District of Kansas distinguished between corporate law theo-

ries and jurisdictional theories relevant to a parent corporation and its wholly owned subsidiary. *Id.* at 483. Beginning with the doctrine of *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), Judge Theis traced the history of jurisdictional analysis over related corporations and concluded that later Supreme Court decisions qualified *Cannon*, directing the inquiry away from "doing business" and "presence" in the forum to a minimum contacts analysis.[3]

*Cannon* predated *International Shoe* by twenty years. At the time it was decided, a plaintiff could invoke jurisdiction over a non-resident parent corporation only by finding it present in the forum. As Judge Theis notes, this standard of corporate presence was the same standard established in *Philadelphia & Reading Ry. v. McKibbin*, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917), which was cited in *Shaffer v. Heitner*, 433 U.S. 186, 202, 97 S.Ct. 2569, 2578, 53 L.Ed.2d 683 (1977), as one of the jurisdictional fictions displaced by *International Shoe*. *Energy Reserves*, 460 F.Supp. at 497. The court in *Energy Reserves* therefore determined that jurisdiction over the subsidiary corporation, Superior Overseas, was to be analyzed purely on the basis of due process and depended on whether there was a "sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum." *Id.* at 502 (quoting *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 159, and *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)). Thus it was unnecessary to consider whether the corporate veil could be pierced or whether the parent was the agent of the subsidiary corporation.

Although Judge Theis analyzed jurisdiction over Superior Overseas from the standpoint of due process, the relationship between the two corporations was not ignored. In addressing the relevant due process considerations as outlined in *International Shoe*, the judge stated:

> A non-resident corporation's tie to the forum, as established through its relationship with an affiliated corporation physically present or transacting business there, is one factor upon which a court may rely to determine whether jurisdiction over the non-resident may be constitutionally exercised.

*Id.* at 507.[4] Thus the mere existence of the relationship between a parent and a subsidiary is a relevant factor, a minimum contact, which may make jurisdiction proper if the other relevant factors balance in that direction. The weight to be given to the existence of a relationship as a "minimum contact" depends on the nature of that relationship. *Id.*

Judge Theis' conclusion is consistent with the Supreme Court's position on the constitutionality of exercising jurisdiction over non-resident defendants. Although the Court has stated that jurisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary, *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984) (citing *Consol. Textile Co. v. Gregory*, 289 U.S. 85, 88, 53 S.Ct. 529, 530, 77 L.Ed. 1047 (1933) and *Peterson v. Chicago, R.I. & P. Railway Co.*, 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841 (1907)), jurisdiction over two related defendants can be established if the requirements of *International Shoe* are met for both. *Cf. Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). The Court also has "rejected

---

**3.** The development of jurisdictional analysis over a non-resident defendant in the Supreme Court is thoroughly reviewed in Judge Theis's opinion and will not be repeated here. *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 495–512 (D.Kan.1978).

**4.** *See also Brunswick Corp. v. Suzuki Motor Co.*, 575 F.Supp. 1412, 1421 (E.D.Wis.1983) ("the forum activities of affiliated entities may be considered in assessing ... the constitutionality of

service [of process] under the due process clause, notwithstanding adherence of the parent and subsidiary to the formalities of corporate separateness"); *Hoffman v. United Telecommunications, Inc.*, 575 F.Supp. 1463, 1471 (D.Kan. 1983) (the nature of the intercorporate relationship is highly probative of the quality and nature of the non-resident's contact with the forum through an affiliated corporation).

the notion that the absence of physical contacts can defeat personal jurisdiction [in the forum]." *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citations omitted). This court, therefore, may initially focus on the relationship between Honda Motor and Honda R & D as a "minimum contact," the relevance of which depends on the nature of that relationship.

Honda Motor and Honda R & D present a unified image to the public. The design and manufacture of the ATC, although performed by separate entities, is a joint effort to place a certain product in a worldwide market. The benefits received by either entity is dependent on the performance of the other. Even if the parent corporation does not "control" its subsidiary, the two are totally interdependent. Thus Honda Motor's purposeful acts of placing the product in a worldwide market, including the United States and Utah, can be attributed to its subsidiary corporation and designer, Honda R & D. This is particularly true in this product liability action in which both the design and the manufacture of the product are specifically at issue.

■ In addition to the contact established through the intercorporate relationship and the parent's actions in the forum, Honda R & D's own actions are relevant here. As the Supreme Court recently noted:

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indi-

cate an intent or purpose to serve the market in the forum State, for example, *designing the product for the market in the forum State, ...* or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Asahi Metal Industry Co., v. Superior Court of Cal., Solano County,* — U.S. ——, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (emphasis added). The purposeful act of the defendant, however, does not necessarily have to be a direct act; an indirect effort to serve the forum state is sufficient. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295–98, 100 S.Ct. 559, 566–68, 62 L.Ed.2d 490 (1980) (an effort of a defendant "to serve, directly or indirectly, the market" is sufficient to subject it to jurisdiction); *Fidelity & Casualty Co. v. Philadelphia Resins Corp.,* 766 F.2d 440, 446 (10th Cir.1985) ("If a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market, then that defendant is subject to jurisdiction there").

■ Honda R & D designs for a particular, related manufacturer and known distributors. It therefore deliberately designs the product for a worldwide market that includes the Utah market and other states. Under the circumstances, this indirect act to serve Utah is an "action of the defendant purposefully directed toward the forum state" which establishes a "substantial connection between the defendant and the forum State necessary for a finding of minimum contacts." *Asahi,* 107 S.Ct. at 1033.[5]

**5.** In *Asahi,* a Japanese manufacturer, Asahi, manufactured tire valve assemblies which were sold to several tire manufacturers. One of its customers, Cheng Shin, sold its tires throughout the world. Although Asahi knew that some of Cheng Shin's tires would be sold in California, it had no offices, property or agents in California. It also did not solicit business in California and did not design or control the system of distribution that carried its valve assemblies into California. The Supreme Court, reversing the California Supreme Court, held that the California courts could not exercise jurisdiction over Asahi because there was no action of the defendant purposefully directed toward the forum state.

The facts in this case are easily distinguished from *Asahi.* In *Asahi,* there was a separate, independent corporation making a product used by numerous manufacturers. The complete interdependence that exists between the two corporations in this case was not present in *Asahi.* Furthermore, because Asahi did not sell to any particular manufacturer, it did not sell valves in any particular market. The manufacturers that purchased it valves could change at any time. Its presence in California, therefore, was fortuitous. Honda R & D, however, designs specifically for Honda Motor and Honda Motor's market (which includes Utah). The manufacturer purchasing its design and marketing the product is fixed and the product's presence in Utah or

This contact with the forum state becomes even more compelling when considered in light of the factors of "fair play and substantial justice." The Supreme Court has noted that "considerations of [fair play and substantial justice] sometimes serve to establish the reasonableness of jurisdiction upon a *lesser showing* of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184 (citations omitted) (emphasis added). The factors to be considered in this regard include:

> "[T]he burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 477, 105 S.Ct. at 2184 (quoting *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564).

In this case, plaintiff resides in Utah and the accident occurred in Utah. Honda R & D's design of the ATC is particularly brought into question. The State of Utah has a considerable interest in protecting its citizens from injury from defective products. Utah also has an interest in protecting its citizens from defending claims worldwide and being subjected to the possibly conflicting standards of other nation's legal systems.[6]

As for the federalism concern expressed in *International Shoe*, that concern is less significant in an international setting, *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1192 (6th Cir.1980), particularly in light of the other factors that weigh in favor of exercising jurisdiction. Under somewhat similar circumstances, the Tenth Circuit held that jurisdiction was proper over a Dutch journalist who made only one visit to Utah because it presented a situation in which the "plaintiff's interest in obtaining

convenient and effective relief ... is not adequately protected by the plaintiff's power to choose [another] forum." *American Land v. Bonaventura Vigevers Maatschappij*, 710 F.2d 1449, 1453 (10th Cir. 1983) (citations omitted). Under such a situation, the court also noted that there were no federal concerns with the sister states and that the state had a strong interest in ensuring protection to its residents from the unlawful acts of nonresidents. *Id.*

Under defendant's theory, the only forum for direct relief from the designer would be Japan. Adopting the defendant's rationale would encourage manufacturers to form separate, independent organizations for product design. Thus designers would be insulated from suit except in the jurisdiction in which they physically reside. There is no sound policy supporting such a result. Exercising jurisdiction over Honda R & D is the only means of providing the plaintiff with convenient and effective relief against the designer, and a Utah forum would provide the most efficient resolution of this controversy. As in *American Land*, jurisdiction over Honda R & D does not concern the interests of a sister state and does not encroach unnecessarily on Japan's interest. Forcing plaintiffs to sue the designer in Japan is much more burdensome than forcing a corporation, which is inextricably linked with a manufacturer that places its product worldwide, to litigate in Utah and other states. Thus it is not against traditional notions of "fair play and substantial justice" to require Honda R & D to submit to the jurisdiction of this court. Honda R & D's motion to dismiss this action for lack of jurisdiction is therefore DENIED.

So ordered.

---

any other market in which Hondas are sold is not fortuitous.

**6.** Utah's interest in providing a single forum in which the plaintiff can seek all the relief he is entitled to is expressly contemplated in the recently amended comparative negligence law, abolishing joint and several liability and rights of contribution among defendants. Utah Code Ann. §§ 78-27-38, -40 (Supp.1986). Under the new Utah statute, unless all defendants are in the same forum, the plaintiff may not be able to get a complete recovery in one action.