**Richard W. LISTER, Plaintiff,**

v.

**MARANGONI MECCANICA S.p.A., Defendant.**

**Civ. No. 88–C–0973A.**

United States District Court, D. Utah, C.D.

Jan. 2, 1990.

Colin P. King of Giauque, Williams, Wilcox & Bendinger, Salt Lake City, Utah, for plaintiff.

H. Wayne Wadsworth of Watkiss & Campbell, Salt Lake City, Utah, and Rudolph V. Pino, Jr. and George N. Tompkins, III of Condon & Forsyth, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

ALDON J. ANDERSON, Senior District Judge.

### I. INTRODUCTION

This products liability action came before the court on the defendant's renewed motion to dismiss for lack of personal jurisdiction. The defendant's original motion to dismiss was denied without prejudice, and the parties conducted further discovery on jurisdictional issues. After conducting further discovery, the defendant still denies having the requisite contacts with this forum to support the court's assertion of personal jurisdiction.

A hearing on the second motion to dismiss was held on September 1, 1989, and the court took the matter under advisement. After reviewing the oral and written arguments and documents of record, the court enters this order, again denying the motion.

### II. BACKGROUND

Richard W. Lister was operating a tire retreader at the premises of his employer, Quality Tire Company, in West Valley City,

Utah, when the upper steel molding of the retreader fell onto his arm, causing him serious injuries. He brought this action against the manufacturer of the retreader, Marangoni Meccanica, S.p.A. (Marangoni).

Marangoni has its principal place of business in Rovereto, Italy. It has no office, telephone number, property, bank accounts or agents in the State of Utah and has never been licensed to do business here. It does not directly advertise or distribute its products in Utah. (¶¶ 3, 4 & 5, Affidavit of Edoardo Salaorni.)

In 1973 Marangoni executed a "sole agency agreement" which recognized a United States company, Marangoni USA, as its exclusive agent for distributing Marangoni products in the United States. (Exhibit A to Plaintiff's Reply Memorandum.) Marangoni USA merged with Technitread, a Minnesota corporation. Later, Technitread filed a petition in bankruptcy and was recognized by the bankruptcy court as successor to Marangoni USA's interest under a 1979 addendum to the sole agency agreement. (Exhibit B to Plaintiff's Reply Memorandum.)

Quality Tire purchased the retreader through Technitread. Technitread sent Marangoni a purchase order for the necessary press, lifting arm and other parts with the notation "Quality Tire Co." and a specification that the "[m]atrix donut hole must be less than 35." (Exhibit C to Plaintiff's Reply Memorandum.) A copy of the invoice Marangoni sent to Technitread also has the notation "(Quality Tire)" next to Technitread's name, but that notation may have been added by Technitread. (Exhibit D to Plaintiff's Reply Memorandum.) Ten months later, Marangoni sent Technitread a shipping order which indicates that payment included a "US$ 30,000 = sight draft at 120 days sight on Northwestern National Bank of Mpls [apparently Minneapolis] under letter of credit No. 00588 of Commercial Security Bank Muray [apparently Murray, Utah]." (Exhibit E to Plaintiff's Reply Memorandum.)

Marangoni denies knowing that Technitread intended to sell the retreader to an entity in the State of Utah. Mr. Salaorni,

Marangoni's Sales Manager, says the name "Quality Tire" does not appear on Marangoni's invoice. (¶ 7, Affidavit of Edoardo Salaorni.) Although "Quality Tire" appears on Marangoni's purchase order, Mr. Salaorni points out "there is no address or indication where 'Quality Tire' is located and neither I nor anyone else at Marangoni, to my knowledge, knew that this 'Quality Tire' was located in the State of Utah. In fact, I am aware of another company by that name which is located in Marion, North Carolina." (*Id.*)

Marangoni did not charge Technitread for any special fabrication, and Marangoni shipped the retreader to Technitread in Minnesota rather than to Quality Tire in Utah.

Lister originally alleged that a representative from Marangoni came to Quality Tire's premises in Utah to install and service the retreader, but now he concedes the representative must have been from Technitread.

### III. DISCUSSION

There are two steps in determining whether personal jurisdiction can be asserted over Marangoni. First, the court must determine whether jurisdiction is proper under Utah's long-arm statute. *Warren v. Honda Motor Co.*, 669 F.Supp. 365, 366–67 (D.Utah 1987). If jurisdiction is proper under the statute, the court must then determine whether the exercise of jurisdiction comports with the due process requirements of the United States Constitution. *Id.*

### A. LONG–ARM STATUTE

Utah's long-arm statute provides:

Any person, ... whether or not a citizen or a resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state;

.    .    .    .    .

(3) the causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. § 78–27–24 (1987).

The Utah legislature intended the long-arm statute to apply "to the fullest extent permitted by the due process clause of the Fourteenth Amendment." *Id.* at § 78–27–22 (1977). At least in cases like this which fall within the statute's categories, the Utah statute is coterminous with due process considerations. *Warren,* 669 F.Supp. at 367 n. 1.

Thus, the critical inquiry is whether the requirements of due process are met. *Id.* at 367.

## B. DUE PROCESS

An exercise of personal jurisdiction comports with due process only if the defendant has certain "minimum contacts" with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that a consumer's unilateral act of bringing a defendant's product into the forum State is insufficient for these purposes. However, the Court noted that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that *delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.*" *Id.* at 297–98, 100 S.Ct. at 567 (emphasis added).

Since *World–Wide Volkswagen,* lower courts have varied in their interpretations of the "stream of commerce" theory. Some courts have held that mere foreseeability or awareness is a constitutionally sufficient basis if the defendant's product made its way into the forum State while still in the stream of commerce. *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir.1984); *Hedrick v. Daiko Shoji Co.,* 715 F.2d 1355 (9th Cir.1983), *reh'g granted and opinion amended,* 733 F.2d 1335 (1984). Other courts, including the Tenth Circuit, have understood due process to require something more than awareness or mere foreseeability. *Fidelity & Casualty Co. v. Philadelphia Resins Corp.,* 766 F.2d 440 (10th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986); *Humble v. Toyota Motor Co.,* 727 F.2d 709 (8th Cir.1984).

The Supreme Court discussed the stream of commerce theory more recently in *Asahi Metal Industry v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The Court unanimously held it would be "unreasonable and unfair" for California courts to exercise personal jurisdiction over a foreign component parts manufacturer which had no contacts with the state—even though the manufacturer knew its part would be incorporated in a finished product that was marketed there. At 113–116, 107 S.Ct. at 1033–1035. However, the Justices disagreed in their views of what would constitute sufficient contacts under a stream of commerce theory. Justice O'Connor wrote:

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But

a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

480 U.S. at 112, 107 S.Ct. at 1033.

Only Chief Justice Rehnquist, Justice Powell and Justice Scalia joined in this portion of the opinion. Justices Brennan, White, Marshall and Blackmun saw no need for a showing of "additional conduct" where the defendant is aware that its "final product is being marketed in the forum State." *Id.* at 117, 107 S.Ct. at 1035. They considered Justice O'Connor's opinion an endorsement of "the minority view among Federal Courts of Appeals." *Id.* at 118, 107 S.Ct. at 1036. But as Justice Stevens pointed out, the Court's finding that the exercise of jurisdiction would be "unreasonable and unfair" required reversal, without any need to reach the question of minimum contacts. *Id.* at 121, 107 S.Ct. at 1037.

The *Asahi* case left lower courts in a quandary, not knowing what principles they should apply in deciding the minimum contacts issue. "The safest route is thus for them to avoid the question when possible and to focus on the reasonableness of jurisdiction." *The Supreme Court 1986 Term,* 101 Harv.L.Rev. 7, 266 (1987).

### 1. REASONABLENESS

In *World–Wide Volkswagen,* the Supreme Court explained that the concept of minimum contacts performs two distinct functions:

> It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

444 U.S. at 292, 100 S.Ct. at 564.

The protection against inconvenient litigation is usually described in terms of "reasonableness" or "fairness." *Id.* Some of the relevant factors in determining the reasonableness of asserting jurisdiction are: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.; Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033. In the case of an alien defendant, courts should give significant weight to "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* at 114, 107 S.Ct. at 1034. However, the interests of the plaintiff and the forum may "justify even the serious burdens placed on the alien defendant." *Id.*

In *Asahi,* the main action had been resolved, leaving only a cross-claim for indemnity. The interest of the cross-claimant and the forum state in the exercise of jurisdiction were insufficient to justify the heavy burdens placed on the foreign defendant. The cross-claimant resided in Taiwan rather than California, and the remaining claim had no direct effect on the safety of consumers in California.

In this case, on the other hand, Lister and the State of Utah have a great interest in asserting jurisdiction over Marangoni. The defective product allegedly was sold to Quality Tire here and caused serious injury here to a Utah resident.

The action could be transferred to the District of Minnesota, since Marangoni clearly has contacts with that forum through its sole distributor, Technitread. However, there would be little difference to an Italian defendant in the burden of defending in this state as opposed to Minnesota.

It would be a much greater burden for the plaintiff to litigate in Minnesota. Since the injury occurred here, many of the witnesses and much of the evidence would be here, and Utah law would apply. Technitread, the distributor in Minnesota, has filed a petition in bankruptcy. "Exercising jurisdiction over [the defendant] is the only means of providing the plaintiff with convenient and effective relief against the designer [or manufacturer], and a Utah fo-

**1528**

rum would provide the most efficient resolution of this controversy." *Warren*, 669 F.Supp. at 371.

In these circumstances, the court cannot find the exercise of personal jurisdiction over Marangoni "unreasonable."

### 2. MINIMUM CONTACTS

The court must therefore decide if Marangoni has the minimum contacts necessary to ensure that it is not reaching beyond the limits imposed by the State's status in a federal system. *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

Marangoni had agreed that Technitread could market its products in "the United States and Canada." (Exhibit A to Plaintiff's Reply Memorandum, Translation at 1.) Utah is one of the states in that intended market. Moreover, the retreader was a large and rather costly product which took some months to supply. The retreader was paid in part by a draft from a bank in Murray, Utah. Even if Marangoni "hid its head in the sand" as to the location of "Muray," it received a sizeable economic benefit from marketing its retreader here.

If "additional conduct" is required beyond placing a product into the stream of commerce, that requirement is met in this case. The product was marketed through a distributor who agreed to serve this and other states. Part of the payment for the product was sent directly from Utah to the defendant in Italy. Quality Tire, a Utah company, specified the size for the product's matrix hole, and the defendant assembled its product according to that specification.

The court therefore finds that Marangoni had sufficient minimum contacts with this forum to support an assertion of personal jurisdiction.

### IV. ORDER

IT IS HEREBY ORDERED that Marangoni's motion to dismiss for lack of personal jurisdiction is denied.