**AMERICAN LIFE AND CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**FIRST AMERICAN TITLE COMPANY OF UTAH, f/k/a Security Title Company, Defendant.**

**FIRST AMERICAN TITLE COMPANY OF UTAH, f/k/a Security Title Company, Third–Party Plaintiff,**

v.

**AMERICAN HERITAGE MORTGAGE CO., Leverick and Musselman, P.C., Richard M. Leverick, and John Does 1 through 5, Third–Party Defendants.**

No. 90–C–1052A.

United States District Court,
D. Utah, C.D.

July 31, 1991.

2. *See* note 1, *supra.*

Rick L. Knuth, Watkiss & Saperstein, Salt Lake City, Utah, for American Life and Cas. Ins. Co.

Ronald G. Russell, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, Utah, for First American Title Co. of Utah.

Mark O. Morris, Ray, Quinney & Nebeker, Salt Lake City, Utah, for Richard M. Leverick and Leverick & Musselman, P.C.

## MEMORANDUM OPINION AND ORDER

ALDON J. ANDERSON, Senior District Judge.

### I. Introduction

Plaintiff American Life and Casualty Company ("American Life") is an Iowa corporation with its principal place of business in Des Moines, Iowa. Defendant and third-party plaintiff First American Title Company of Utah ("First American") is a Utah corporation with its principal place of business in Salt Lake County, Utah. First American is the successor by merger to Security Title Company ("Security Title"). R. doc. 1, ¶ 2. Third-party defendant Richard M. Leverick is an attorney licensed to practice law in New Mexico and Texas. Third-party defendant Leverick & Musselman is a New Mexico professional corporation. American Heritage Mortgage Co. ("American Heritage") is a New Mexico Corporation having its principal place of business in New Mexico.

In late 1987, American Heritage asked Leverick to prepare loan documents and to review mortgage title insurance commitments in connection with six commercial loans to six individuals. Each loan was to be secured by a first lien deed of trust against condominium units located in American Towers in Salt Lake City. Leverick prepared a note, deed of trust and other loan documents for each of the six loans. Leverick also prepared six letters, each addressed to Security Title Company, which contained closing instructions for the loans. Each letter contained identical instructions and differed only in the name of the borrower and other information specific to the individual loan. Each letter was addressed to Security Title Co. and bore the notation "DELIVERED WITH LOAN PACKAGE." R. doc. 9, exb. A, exb. A.

Leverick did not mail the closing instructions to Security Title in Utah but delivered the letters and other loan documents to American Heritage in Albuquerque, New Mexico. American Heritage sent at least three loan packages, including the closing instructions, to Security Title in Utah. R. doc. 20, ¶ 6. Each letter stated as follows:

> In the event that all of the foregoing conditions cannot be met and satisfied in full at or prior to the time of closing of this loan, the Agent shall contact the undersigned to determine if any of the conditions contained herein may be waived and, if not, the Agent shall return the items deposited with the Agent in escrow pursuant to this letter in accordance with directions given by the undersigned.

R. doc. 20, exb. A at 4. An officer of Security Title telephoned Leverick on December 23, 1987 and had a conversation which lasted about 20 minutes.

At the closing of the sales of the condominiums, Security Title accepted a single check for the collective down payments of the purchasers, recorded the documents and disbursed the funds effectuating the

purchase and loan transactions. The check was dishonored on presentation and American Life, which held the trust deeds by assignment, foreclosed. The proceeds of the sale were not sufficient to re-pay the loan debts. R. doc. 3, p. 13, ¶ 17.

## II. Procedural History

American Life initiated this action against First American, the successor to Security Title, alleging that First American was negligent and breached its fiduciary duty to American Life by failing to require that the buyers' down payment be paid in certified or collected funds. R. doc. 1, ¶¶ 20–23. First American filed a third-party complaint against Leverick alleging that Leverick negligently failed to require, as a condition to closing, that the buyers pay their down payment in cash or by a cashier's check. R. doc. 3, p. 13, ¶ 19. Leverick now moves the court to dismiss the action claiming that this court is without *in personam* jurisdiction over him. R. doc. 8.

Defendant Leverick's motion to dismiss was fully briefed by the parties and the court heard oral argument on the motion. At the conclusion of oral argument, the court took the matter under advisement. By letter to the court, counsel for First American presented additional *ex parte* argument in opposition to the motion. In response to that letter, counsel for Leverick wrote the court and urged the court to ignore the additional argument contained in First American's letter. Counsel for Leverick again wrote the court, this time responding to the arguments made in First American's letter and presenting additional citations of authority.

## III. Analysis

■ The Rules of Practice of the United States District Court for the District of Utah establish a procedure by which motions may be presented to the court. Each motion is to be accompanied by a memorandum of supporting authorities that is filed or presented with the motion. The Rules contemplate the filing of a memorandum opposing a motion and also allow a reply memorandum which may be filed at the

discretion of the movant within the time limits proscribed by Rule 202. Leave of court must be obtained before any additional memoranda will be considered. The presentation of additional argument by letter to the court is not authorized by the local rules and places an unnecessary burden on the court and opposing counsel. The court has considered the additional materials and concludes that they do not change the court's ruling.

### Jurisdiction

Two requirements must be satisfied before this court can properly assert personal jurisdiction over a non-resident defendant. First, the assertion of jurisdiction must be authorized by the laws of Utah, the forum state. *Lister v. Marangoni Meccanica*, 728 F.Supp. 1524, 1525 (D.Utah 1990); *see also Fidelity & Casualty Co. of N.Y. v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir.1985) *cert. denied*, 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986) ("[W]hether a federal court has in personam jurisdiction over a nonresident defendant in diversity cases is determined by the law of the forum state."). Second, the exercise of jurisdiction must comport with the due process requirements of the United States Constitution. *Lister*, 728 F.Supp. at 1525; *accord Warren v. Honda Motor Co.*, 669 F.Supp. 365, 367 (D.Utah 1987).

The burden of establishing personal jurisdiction over a nonresident defendant is on the plaintiff. *Fidelity & Casualty Co. of N.Y.*, 766 F.2d at 443; *accord Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984); *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982). The Tenth Circuit has described this burden as follows:

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendant's affidavits.

If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990) (quoting *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985)).

### 1. The Utah Long–Arm Statute

The Utah long-arm statute, which provides the basis for asserting personal jurisdiction over non-resident defendants, provides in relevant part:

Any person, ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state;

(2) contracting to supply services or goods in this state;

(3) the causing of any injury within this state whether tortious or by breach of warranty;

(4) the ownership, use or possession of any real estate situated in this state;

(5) contracting to insure any person, property, or risk located within this state at the time of contracting; ....

*Utah Code Ann.* § 78–27–24 (1987).

The Utah long-arm statute confers jurisdiction only over those claims "arising from" one of the enumerated activities. *Utah Code Ann.* § 78–27–26 (1987); *see Frontier Federal Savings & Loan Association v. National Hotel Corp.,* 675 F.Supp. 1293, 1298 (D.Utah 1987); *Nova Mud Corp. v. Fletcher,* 648 F.Supp. 1123, 1126 (D.Utah 1986). First American alleges that Leverick transacted business within this forum by drafting loan documents and letters for his New Mexico client which concern Utah real properties. R. doc. 3, p. 12, ¶ 12.

The Utah legislature intended the long-arm statute to extend to the fullest extent allowed by due process. *Utah Code Ann.* § 78–27–22 (1987); *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106, 1110 (Utah 1985). Because the state and federal limits are coextensive, the court must decide whether the exercise of jurisdiction here accords with constitutional principles of due process.

### 2. Due Process

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). For purposes of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Redzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

To establish minimum contacts, a defendant must "purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84 (1985) ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state.") (emphasis in original). The Supreme Court has emphasized that this "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted).

In *Rambo v. American Southern Insurance Co.,* 839 F.2d 1415 (10th Cir.1988), the Tenth Circuit considered the minimum con-

tacts required to support the exercise of personal jurisdiction. The court observed that

> telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. However, the exercise of jurisdiction depends on the *nature* of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards.

*Id.* at 1418 (citations omitted) (emphasis in original).

■ First American claims that the closing instructions and other contacts by Leverick with Utah are sufficient to support the exercise of jurisdiction over him. First American cites *Edmonton World Hockey Enterprises, Ltd. v. Abrahams*, 658 F.Supp. 604 (D.Minn.1987) and *Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987) in support of this claim. In both cases, the court found that the assertion of jurisdiction over an out-of-state attorney was proper. *Abrahams* is clearly distinguishable in that the attorney over whom the court asserted jurisdiction had negotiated and signed a settlement agreement in the forum state. The claim was essentially one for breach of a personal contract entered into in the forum state by the attorney. In the present case, Leverick's contractual relationship with American Heritage was in New Mexico and not with any party in Utah.

*Lake v. Lake* is similar to this case but is distinguishable on key facts. In *Lake*, the plaintiff was an Idaho man who brought a tort action against his ex-wife and her California attorney. The plaintiff claimed that the California attorney had committed a tort within the state of Idaho by misrepresenting certain facts to a California court in order to obtain a court order to aid his client in securing physical custody of her child in Idaho. The plaintiff alleged that the attorney intentionally misrepresented certain key facts to the California court to obtain the *ex parte* order. The attorney sought the order so the client could use it to persuade Idaho officials to help his client obtain physical custody of the child. The client traveled to Idaho and used the *ex parte* order to convince the district attorney's office and the Idaho sheriff's department to assist her in taking custody of her child.

The father filed suit in Idaho alleging numerous tort claims against the parties involved. The trial court granted the attorney's motion to dismiss the action on the basis that the court lacked personal jurisdiction over the California attorney. On appeal, the Ninth Circuit reversed, finding the attorney's conduct in procuring the *ex parte* order to be sufficient contact to allow the Idaho court to assert personal jurisdiction over him.

In deciding *Lake*, the Ninth Circuit relied on the intentional misrepresentation of an attorney to a court in one state to support the exercise of jurisdiction over him in another state. The attorney knew the order would be used in the other jurisdiction to persuade the local authorities to assist in obtaining custody of a child who was in the lawful custody of the father in Idaho. The attorney obtained the court order for the specific purpose of enlisting the assistance of Idaho laws and officials. The court order itself was improperly obtained and represented an abuse of the legal system.

In the present case, the closing instructions prepared by Leverick for his client were to be used by private parties and were not intended to convince local authorities to take any action. Although Leverick also prepared loan documents which were apparently recorded in Utah and used as authority to foreclose, only the closing instructions are claimed to be defective.

■ In determining whether sufficient minimum contacts exist with the forum state, the court must consider the "relationship between the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). In addition, the court must consider additional factors including:

> the burden on the defendant, the interests of the forum State, and the plain-

tiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

In the present case, Leverick's contacts with this forum are attenuated. Leverick's only contact with Utah was as agent for his client. Leverick has never been in Utah and has no clients who reside in or maintain business offices in Utah. R. doc. 9, exb. A, ¶¶ 6–7. At the direction of his New Mexico client, Leverick prepared loan documents and closing instructions for a transaction in Utah involving Utah real estate. Leverick prepared these materials with the understanding that they would be sent to Utah by his client. Leverick, however, directed his efforts towards serving his client in New Mexico and not towards Utah.

Utah has a significant interest in providing a forum for its citizens who are injured by the acts of non-residents. First American claims that it was injured by Leverick's failure to require that the condominium buyers pay their down payment in cash or by a cashier's check. If the instructions were defective, First American may pursue its claim against American Heritage because Leverick purportedly acted as agent for American Heritage in communicating the closing instructions. Thus, First American would not be left without a remedy if Leverick were dismissed from this action.

Public policy also favors the dismissal of Leverick from this action. Attorneys are often asked to perform services for their local clients which services may have some impact in another jurisdiction. To require an attorney to submit to personal jurisdiction in a foreign jurisdiction each time the attorney communicates instructions on behalf of a client does not comport with fundamental fairness. The mere communication of such instructions may not be considered a purposeful availment of the privilege of conducting activities within a foreign jurisdiction. *See Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239.

### IV. Conclusion

The court finds that third-party plaintiff First American has failed to meet its burden of establishing personal jurisdiction over third-party defendants Richard M. Leverick and Leverick and Musselman, P.C. First American has presented insufficient evidence in support of its assertion that Leverick purposefully established contacts with the state of Utah such that the maintenance of this suit would not offend due process.

The evidence shows that Leverick prepared certain documents, including closing instructions, for his client in New Mexico. These closing instructions were sent to Utah by the client. However, Leverick's contact with Utah was as an agent for his client and cannot be considered as purposeful availment of the privilege of conducting activities within Utah. Absent a substantial connection with the state of Utah, this court may not assert jurisdiction over him. Because the court is without jurisdiction over Richard M. Leverick and Leverick and Musselman, P.C., the third-party claim of First American against them must be dismissed.

IT IS SO ORDERED.