**The TRAVELERS INDEMNITY CO., Plaintiff,**

v.

**TEC AMERICA, INC., Tokyo Electric Co., Ltd., and Digital Control Systems, Inc., Defendants.**

No. 4:CV–94–0655.

United States District Court, M.D. Pennsylvania.

Nov. 17, 1995.

Steven L. Smith, Cozen & O'Connor, Philadelphia, PA, for plaintiff.

Kevin G. O'Donovan, Palmer Biezup & Henderson, Philadelphia, PA, for defendant Tokyo Electric Co., Ltd.

## *MEMORANDUM*

McCLURE, District Judge.

### BACKGROUND

Plaintiff's claim arises out of a fire which broke out at a Wendy's restaurant in Shamokin Dam, Pennsylvania on November 23, 1993. Plaintiff alleges that the fire was caused by a defect in a cash register designed and manufactured by defendant Tokyo Electric Co. Ltd. (TEC–Japan).

TEC–Japan moves to dismiss for lack of personal jurisdiction. For the reasons which follow, the motion will be denied.

### DISCUSSION

#### Personal jurisdiction standards

■ Defendant argues that it has insufficient contacts with Pennsylvania to justify this court's exercise of personal jurisdiction over it. The service of process rules of the state where the district court sits govern personal jurisdiction issues. *Bane v. Netlink, Inc.*, 925 F.2d 637, 639 (3d Cir.1991) and Fed.R.Civ.P. 4(e). The Pennsylvania longarm statute permits state courts to exercise *in personam* jurisdiction "to the fullest extent allowed under the Constitution of the United States" and to be based on "the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981). The principal inquiry is whether the exercise of jurisdiction is constitutionally proper.

■ When personal jurisdiction is challenged, the plaintiff bears the burden of proving that it is proper through affidavits "or other competent evidence". *North Penn Gas Co. v. Corning Natural Gas Corp., per curiam,* 897 F.2d 687, 689 (3d Cir.), *cert.*

*denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990) and *Lieb v. American Pacific International, Inc.* 489 F.Supp. 690, 694 (E.D.Pa.1990). In recognition of the "procedural and evidentiary difficulties" this burden may impose on the plaintiff in early stages of the case, courts in this circuit have adopted a graduated test which requires the plaintiff to establish only a *prima facie* case of jurisdiction at a stage when the record consists only of affidavits and pleadings. *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.,* 785 F.Supp. 1186, 1190 (W.D.Pa.1992).

■ Personal jurisdiction may be based either on the conduct of the non-resident defendant which gave rise to the cause of action (specific jurisdiction), or on the defendant's general contacts with the forum state, provided those contacts are "continuous and systematic", (general jurisdiction). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 473 n. 15, 105 S.Ct. 2174, 2181–82, 2182 n. 15, 85 L.Ed.2d 528 (1985) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 and 9, 104 S.Ct. 1868, 1872 n. 8 and 9, 80 L.Ed.2d 404 (1984).

■ "[G]eneral jurisdiction exists when there are sufficient contacts to justify an assertion of 'personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'" *Covenant Bank for Savings v. Cohen,* 806 F.Supp. 52, 55 (D.N.J.1992), quoting *Hall, supra,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. "Mere minimum contacts" are not enough to establish general jurisdiction— "The nonresident's contacts to the forum must be continuous and substantial." *Provident National Bank v. California Federal Savings & Loan Association,* 819 F.2d 434, 437 (3d Cir.1987). Accord: *Hall, supra,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

■ Specific jurisdiction is based on defendant's "purposefully directing activity toward the forum state, *Applied Biosystems, supra,* 772 F.Supp. at 1470, such that it could "reasonably anticipate being haled into court there", *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Proof that the defendant has "purposefully directed" its activities at residents of the forum state, "deliberately engaged" in "significant activities" in the state, or created "continuing obligations" with state residents establishes personal jurisdiction over the defendant in litigation arising out of such activities. *Burger King, supra,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (Citations omitted.)

■ If minimum contacts exist, then the court considers whether its exercise of personal jurisdiction over the defendant "accords with the notions of 'fair play and substantial justice.'" *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 481 (3d Cir.1993), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant bears the burden of showing that such is not the case, and the factors relevant to that determination are: 1) the interests of the forum state; 2) the plaintiff's interest in obtaining relief; 3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 4) the shared interest of the several States in furthering fundamental substantive social policies. *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir.1990), citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987). In making this determination, if the requisite minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction may "justify even the serious burdens placed on the alien defendant." *Grand Entertainment Group,* 988 F.2d at 483.

■ Although jurisdictional questions are decided on the specific facts of the case, *Farino, supra,* 960 F.2d at 1224, in general the following are true. Unilateral acts of the plaintiff or a third party are not sufficient in and of themselves to establish specific jurisdiction because they do not satisfy the purposeful availment requirement. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84 and *Hall, supra,* 466 U.S. at 417, 104 S.Ct. at

1873–74. A non-resident defendant's responses to requests or inquiries of other parties are considered in weighing its contacts, but cannot be the sole basis for a finding that jurisdiction exists. *Burger King, supra*, 471 U.S. at 474, 105 S.Ct. at 2183. "Random", "fortuitous", and "attenuated" contacts are likewise insufficient, by themselves, to satisfy due process. *Burger King, supra*, 471 U.S. at 475, 105 S.Ct. at 2183–84 (Citations omitted.)

Jurisdiction can exist without a showing that the defendant has established a physical presence within the forum state. Thus, it is not essential for the plaintiff to produce evidence that the defendant maintains offices or bank accounts, stores, supplies or equipment, etc., in the forum state. *Burger King, supra*, 471 U.S. at 476, 105 S.Ct. at 2184. See also: *North Penn, supra*, 897 F.2d at 690 (3d Cir.1990).

### Renner v. Lanard Toys

*Renner v. Lanard Toys, Ltd.*, 33 F.3d 277 (3d Cir.1994) was the Third Circuit's first analysis of the "stream of commerce" theory post-*Asahi*. Commenting on the Supreme Court's decision in *Asahi*, the court stated:

> Although the 4–4–1 vote of the Supreme Court makes it difficult to even attempt to promulgate the last word on the "stream of commerce" theory, certain guidelines have emerged. It is clear, for example, from Asahi and its precursors that there must have been some "purposeful availment" by the defendant of the forum state.... Even under Justice Brennan's view, the mere knowledge or awareness that one's products will end up in the forum state without some regularity of shipment would not be enough. The contact must be purposeful, rather than incidental, because the stream of commerce does not refer to "unpredictable currents or eddies."

*Id.* at 282.

The court further stated that the fact that the defendant does not ship directly into the forum state is not dispositive. "Nothing in Justice O'Connor's plurality opinion [in *Asahi*] suggests that the fact that a foreign manufacturer or seller rids itself of title by a sale F.O.B. a foreign port is enough to insulate that manufacturer or seller from juris-

diction if there is the other type of activity" connecting the seller to the forum state.

### Contacts of TEC–Japan

The facts of *Renner* somewhat parallel those of this case. Plaintiff David J. Renner was seriously injured when a toy stuntplane he was using exploded, driving shards of plastic into his face and left eye. The stuntplane had been purchased for Renner's nephew at the McCrory's store in Erie, Pennsylvania. It was supplied to McCrory's by its buying agent, Trade Power Associates, Ltd. Trade Power Associates had purchased the toy from defendant Lanard Toys, Ltd. in Hong Kong. Lanard moved to dismiss for lack of personal jurisdiction, asserting that it manufactured the planes in Hong Kong and sold them to independent distributors F.O.B. (freight-on-board) Hong Kong. It did not sell or manufacture toys in Pennsylvania; it owned no real property here, had no employees, offices, post office boxes or bank accounts in Pennsylvania; had no exclusive distributors, or any financial interest in or control over any of its distributors; and had no way of knowing or controlling where the distributors market its products.

Although the Third Circuit remanded the case to the district court for additional discovery without deciding the issue of jurisdiction, it included in its analysis a discussion of the facts key to determining whether jurisdiction exists over a foreign manufacturer under such circumstances.

> [D]iscovery [which] might shed information on what Trade Power Associates, Ltd. is, whether advertisements for Lanard Toys are seen or heard in Pennsylvania, whether Lanard designs its toys with a market in mind that includes Pennsylvania, how many Lanard products are sold in Pennsylvania, and/or whether Lanard participates in toy shows that are aimed at selling toys to a multi-state market that includes Pennsylvania.

*Id.* at 283–84.

The court also stated that, although it could not determine these facts from the record before it,

It is possible that if Lanard was involved in having its products tested to meet the "McCrory Stores Protocol" for McCrory's Stores in York, Pennsylvania, that would show that Lanard intentionally markets or even designs its toys for the Pennsylvania market, one of Justice O'Connor's *Asahi* examples. The record does not show Lanard's connection with the laboratory tests run for McCrory's. Notwithstanding the Renners' contention that the reports evidence purposeful availment, those papers show only that Lanard received copies of tests that were run. We cannot assume the mere receipt of copies constitutes active conduct on Lanard's part to design or market a product to the state.

*Id.*, at 283.

TEC–Japan sells the cash registers which it manufactures to its subsidiary, TEC–America, Inc. The cash registers are sold F.O.B. Japan. TEC–America then ships the cash registers to its principal place of business in Atlanta, Georgia for sale and distribution. TEC–Japan owns 100% of the stock in TEC–America. (Record document no. 22, ¶¶ 10–13).

In support of its claim that TEC–Japan has purposefully availed itself of the Pennsylvania forum under the standards articulated in *Asahi* and *Renner*, plaintiff relies on the following: 1) its assertion that TEC–Japan retained the services of TEC–America as its exclusive United States distributor and as its sales agent in all 50 states, including Pennsylvania; and 2) evidence that TEC–Japan designs its products with the U.S. market in mind.

■■ We have no difficulty in concluding that TEC–Japan purposefully avails itself of the United States market. Designing a product with a particular market in mind was one of the criteria identified in *Renner* as significant. TEC–Japan designs and manufactures its cash registers for the American market. The cash registers are designed to be compatible with U.S. electrical service. They contain circuitry which allows them to process transactions in the U.S. monetary system of dollars and cents. TEC–Japan publishes the keyboard, the printer and its manuals in English and obtained United States copyright protection for its manuals. TEC–Japan also purchases liability insurance coverage for products sold in the United States.

■■ The more difficult question is whether it has "purposefully availed" itself of the privilege of doing business not just in the United States, but in Pennsylvania in particular. Other courts have held that retaining the services of a nationwide distributor evidences intent to market the product in all 50 states. *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 544 (6th Cir. 1993). See also: *Lister v. Marangoni Meccanica, S.p.A.*, 728 F.Supp. 1524, 1527–28 (D.Utah 1990). Sufficient minimum contacts exist if a manufacturer introduces its product into the forum state via a distribution network intended to have that effect. *Felty v. Conaway Processing Equipment Co.*, 738 F.Supp. 917 (E.D.Pa.1990).

Although plaintiff asserts that defendant has a distribution agreement with TEC–America authorizing it to distribute its products in all fifty states, proof of this is lacking. Plaintiff cites and attaches a copy of a 1984 dealer agreement between TEC–America and Digital Control Systems, Inc. (Digital Control). While the agreement plainly establishes purposeful intent on the part of TEC–America to distribute products in Pennsylvania, it does not have the same effect with respect to TEC–Japan. The two are independent corporations and there is nothing before the court to suggest that TEC–America is merely the alter ego of TEC–Japan. The facts set forth in the affidavits filed by TEC–Japan, in fact, suggest the opposite.

The key link in the alleged chain between TEC–Japan and Pennsylvania is its distribution agreement with TEC–America. That document, however, is not before the court.

In the event that proof of sufficient ties is lacking, plaintiff seeks additional time for discovery. Under the Third Circuit's holding in *Renner*, we agree that additional time to request relevant documents is appropriate,

particularly since foreign parties are involved.