**AMERICAN LAND PROGRAM, INC.,**
**Plaintiff-Appellant,**

v.

**BONAVENTURA UITGEVERS MAAT-SCHAPPIJ, N.V., Peter Hund, Louis Johan Leeman, N.A.G. Van Rossum, Defendants-Appellees.**

**No. 81–1751.**

United States Court of Appeals,
Tenth Circuit.

June 24, 1983.

Joseph E. Tesch of Tesch, Hufnagel & Van Dam, Salt Lake City, Utah, for plaintiff-appellant.

Marcia B. Paul, New York City (James H. Stark, New York City, with her on the brief; H. Wayne Wadsworth of Watkiss & Campbell, Salt Lake City, Utah, also on the brief), of Greenbaum, Wolff & Ernst, New York City, for defendants-appellees.

Before HOLLOWAY, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This is an action for slander arising out of a Dutch journalist's investigation of a land-sales scheme. American Land Program, Inc. appeals the district court's order granting a motion to dismiss for lack of personal jurisdiction over the foreign defendants. We reverse in part and affirm in part.

I.

## BACKGROUND

American Land Program, Inc. (ALP Inc.) is a California corporation that does business in various states. American Land Program, B.V. (ALP B.V.) is a Dutch corporation that conducts a wide-ranging real estate enterprise in which Dutch and other European investors are solicited to invest in American real estate. ALP B.V. makes broad claims that its investors will realize significant financial gain from direct return on the real estate and from tax advantages. ALP Inc. and ALP B.V. enjoy a degree of common ownership, and ALP Inc. brokers, markets, develops, and manages land sold to Dutch investors by ALP B.V. A significant amount of ALP Inc.'s income is derived from the fees it receives from handling these real estate transactions for ALP B.V.

Bonaventura Uitgevers Maatschappij, N.V. (Bonaventura) is a Dutch corporation which, among other things, publishes Elsevier's Weekblad (Weekblad), a weekly financial information magazine published in Holland. At the time this action arose, Peter Hund was Weekblad's real estate editor, Louis Leeman was the magazine's chief executive officer, and N.A.G. Van Rossum was its editor in chief.

ALP B.V. engaged in substantial publicity to promote its investment program. Hund became interested in the claims of financial success made by ALP B.V., and began investigating its program. In January 1979, Hund flew to the United States on assignment by Weekblad to acquire information to be used in a series of articles on ALP B.V. and the American real estate that it was marketing.

Hund spent approximately three weeks in the United States. During this time, he inspected properties marketed by ALP B.V. and interviewed a number of people, some of whom had business dealings with ALP Inc. Hund returned to Holland, and Weekblad subsequently published a series of six articles on the " 'American Land Program' (ALP)" activities, rec., vol. I, at 177, without distinguishing between the various

American Land Program corporations. The articles alleged serious discrepancies between claims made by "ALP" and facts discovered by Hund.

ALP Inc. filed an action for defamation against Hund and Bonaventura, claiming that Hund had slandered ALP Inc. in the course of interviewing people doing business with it. This initial suit was filed in federal district court in California, in the district in which ALP Inc. maintains its principal place of business. The court dismissed the action for lack of jurisdiction because none of the alleged tortious conduct had occurred in California and personal service had not been perfected on Hund. ALP Inc. did not appeal the dismissal.

ALP Inc. subsequently filed the instant suit in the district of Utah. The complaint is virtually identical to that filed in the California action except for the addition of Van Rossum and Leeman as codefendants. The complaint alleges four causes of action against Hund and Bonaventura for slanderous statements Hund made in Utah, New York, and Texas while acting on behalf of Bonaventura. Specifically, it is alleged that Hund falsely stated to various individuals that plaintiff and its agents were making misrepresentations to investors, and that the property sold to investors was not worth as much as plaintiff claimed. Van Rossum and Leeman are named in a fifth cause of action that alleges a conspiracy to defame ALP Inc. Jurisdiction in the Utah district court is premised on diversity under 28 U.S.C. § 1332 (1976). Service of process was made in Amsterdam on each· of the named defendants under Federal Rule of Civil Procedure 4(d)(7) and the Utah long arm statute, Utah Code Ann. § 78–27–24 (1977).

Defendants filed alternative motions to dismiss and for summary judgment. Following extensive briefing and oral argument, the trial court granted the motion to dismiss for lack of personal jurisdiction. The court based its ruling on Utah caselaw exploring the reach of Utah's long arm statute, and on the proposition that " 'First Amendment considerations surrounding the law of libel [and in this case slander] require a greater showing of contact to satisfy the due process clause than is necessary over other types of tortious activity.' *New York Times Co. v. Connor*, 365 F.2d 567, 572 (5th Cir.1966)." Rec., vol. II, at 426.

## II.

### LONG ARM JURISDICTION

The issue on appeal is whether the district court had personal jurisdiction over the alien defendants under the Utah long arm statute. The statute provides:

"Any person, ... whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

" ...

"(3) The causing of any injury within this state whether tortious or by breach of warranty...."

Utah Code Ann. § 78–27–24 (1977).

The Utah Supreme Court, in examining the reach of the long arm statute, has recently remarked that

"reference to the Legislature's intent in enacting the Utah Long Arm Statute is illuminating. In declaring the purpose of the act the Legislature explained in 78–27–22:

" ...

'The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over non resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'

"The legislative mandate is clear. The protection afforded by the courts of this State must be applied to the fullest extent allowed by due process of law."

*Brown & Associates v. Carnes Corp.*, 611 P.2d 378, 380 (Utah 1980). *See Mallory*

*Engineering, Inc. v. Ted R. Brown & Associates,* 618 P.2d 1004, 1006 (Utah), *cert. denied,* 449 U.S. 1029, 101 S.Ct. 602, 66 L.Ed.2d 492 (1980). We must thus determine whether assumption of personal jurisdiction over defendants in this action would violate due process.[1] Accordingly, while the decisions of the Utah courts applying the state's long arm statute inform our determination, they do not control it.

■ "The Due Process Clause requires that before a court can exercise personal jurisdiction over a nonresident defendant, the defendant must have had such 'minimum contacts' with the forum state that maintenance of the suit 'does not offend "traditional notions of the fair play and substantial justice." ' " *Leney v. Plum Grove Bank,* 670 F.2d 878, 880 (10th Cir. 1982) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). *International Shoe's* "minimum contacts" doctrine focuses on the fairness of requiring the defendant to defend in the forum state. *Leney,* 670 F.2d at 880; *see Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

"*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 [100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980), declared the defendant's 'conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.' In determining whether it may fairly exercise jurisdiction based on the defendant's connections with the forum state, a court may consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient, effective relief, and the judicial system's interest in efficiently resolving controversies. *Id.* at 292 [100 S.Ct. at 564]."

*Leney,* 670 F.2d at 880; *see Mallory Engineering,* 618 P.2d at 1008.

■ In determining if the exercise of jurisdiction over a nonresident defendant would offend traditional notions of fair play and substantial justice, the Utah Supreme Court has recognized that "the central concern of the inquiry into personal jurisdiction is the relationship of the defendant, the forum, and the litigation, to each other." *Mallory Engineering,* 618 P.2d at 1007. The assessment of that relationship involves determining whether the defendant has " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws;' . . . [w]hether the cause of action arises out of or has a substantial connection with the activity; and . . . [t]he balancing of the convenience of the parties and the interests of the State in assuming jurisdiction." *Id.* at 1008 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)); *Brown & Associates,* 611 P.2d at 380.

### A. Hund

The present action arose directly out of defendant Hund's activity in Utah. He entered the state to conduct "investigative reporting," during which activity he is alleged to have slandered ALP Inc. By allegedly causing injury within the state, Hund satisfied the purposeful activity requirement of *Hanson. See Mallory Engineering,* 618 P.2d at 1008. This same conduct establishes "the requisite connection between the nonresident defendant's activity and the cause of action." *Id.* at 1008–09. *Compare World-Wide Volkswagen Corp.,* 444 U.S. at 295, 100 S.Ct. at 566. We must, therefore, examine on balance the fairness to the parties and interests of the State in assuming jurisdiction.

The record reveals that Hund had no contact with Utah other than his trip to the

---

**1.** Alien defendants are entitled to due process. *Galvan v. Press,* 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954). Whether the due process clause properly involved is that of the Fifth or the Fourteenth Amendment, we conclude that "in any event, *International Shoe* and its progeny point the way" to our resolution of this case. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 416 n. 7 (9th Cir.1977).

state. The assumption of jurisdiction would require this Dutch defendant to defend in a truly foreign forum. Also weighing in the balance, however, is the fact that Hund intentionally traveled to Utah and allegedly committed a tort there to ALP Inc.'s detriment. The commission by a defendant of a tort constitutes "conduct and connection with the forum State ... such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

ALP Inc. does business in Utah in furtherance of its business enterprise with ALP B.V. Noting that its California suit was dismissed for lack of jurisdiction, ALP Inc. points out that if the slander committed in Utah is not sufficient to confer long arm jurisdiction over defendants, no United States forum will be available because the slander committed in New York and Texas was virtually identical. Consequently, we are presented with a situation where "the plaintiff's interest in obtaining convenient and effective relief ... is not adequately protected by the plaintiff's power to choose [another] forum." *Id.* at 292, 100 S.Ct. at 564 (citation omitted). Moreover, we perceive no greater contacts or interest in this litigation by Utah's sister states that would require us to pause and consider the federalism concerns implicit in *International Shoe's* minimum contacts test. *See World-Wide Volkswagen Corp.*, 444 U.S. at 293–94, 100 S.Ct. at 565–66. Utah, through both legislative and judicial pronouncements, has clearly expressed its interest in ensuring protection to its residents from the unlawful acts of nonresidents. This protection extends to nonresident corporations such as ALP Inc. *Hughes Tool Co. v. Meier*, 486 F.2d 593 (10th Cir.1973).

Finally, we have not been offered, nor can we find, any significant interest that the Netherlands might have in this action to compel us to require ALP Inc. to travel abroad to litigate torts allegedly committed in the United States. There is no suggestion that permitting this litigation to go forward would intrude upon the sovereignty of the Netherlands. *See generally, e.g., Steinberg v. International Criminal Police*

*Organization*, 672 F.2d 927, 932 (D.C.Cir. 1981); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 644 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981); *Engineered Sports Products v. Brunswick Corp.*, 362 F.Supp. 722, 729 (D.Utah 1973).

Defendants argue, and the district court held, that First Amendment considerations surrounding the law of slander require a greater than normal showing of contacts to satisfy due process considerations, citing *New York Times Co. v. Connor*, 365 F.2d 567, 572 (5th Cir.1966). This court has rejected the Fifth Circuit's position in *Connor*, holding instead that such concerns are more properly resolved as a matter of the substantive law of slander than as a threshold matter of jurisdiction. *Anselmi v. Denver Post, Inc.*, 552 F.2d 316, 324 (10th Cir.1977), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1971); *see Buckley v. New York Post Corp.*, 373 F.2d 175, 182–84 (2d Cir.1967).

■ On balance, then, we hold that fairness to the parties and the interest of Utah favor extending personal jurisdiction over Hund under the Utah long arm statute. In the circumstances of this case, Hund's contacts with the state are sufficient under the due process clause of the Fourteenth Amendment to support the exercise by Utah of personal jurisdiction.

### B. Bonaventura

■ The record indicates that Bonaventura, through Weekblad, sent Hund to the United States to investigate ALP B.V.'s business there. It had no other contact with the state of Utah. However, Hund's reporting efforts were made within the scope of his authority and in furtherance of Weekblad's (and hence Bonaventura's) business and purposes, *i.e.*, gathering and publishing news. Under Utah law, this is sufficient to place Bonaventura within the reach of the long arm statute. *See Producers Livestock Loan Co. v. Miller*, 580 P.2d 603, 605–06 (Utah 1978). The district court thus

also has personal jurisdiction over Bonaventura.

### C. Leeman and Van Rossum

Defendants also argue that Leeman and Van Rossum, who are being sued in their individual capacities, had *no* contact with Utah, and thus are not subject to suit in that state. ALP Inc.'s fifth cause of action alleges that a conspiracy existed between Hund, Leeman, Van Rossum, and other agents of Bonaventura, to damage ALP Inc.'s business by defaming its reputation and by publishing inaccurate and misleading articles about ALP B.V., and that the alleged slander was in furtherance of the conspiracy. If jurisdiction over these defendants exists, it does so by reason of Count Five. The issue before us is whether the acts of a nonresident conspirator, which establish sufficient contacts with the forum state to make that conspirator amenable to service under that state's long arm statute, are likewise sufficient to establish personal jurisdiction over nonresident coconspirators.

The First Circuit has noted that

"some courts have recognized a 'conspiracy theory of personal jurisdiction,' whereby jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants.... But, to sustain jurisdiction over an out-of-state co-conspirator these courts required something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and of which the out-of-state co-conspirator was or should have been aware."

*Glaros v. Perse,* 628 F.2d 679, 682 (1st Cir. 1980). *See, e.g., Gemini Enterprises v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C.1979); *Professional Investors Life Insurance Co. v. Roussel,* 445 F.Supp. 687, 691–96 (D.Kan.1978); *Ghazoul v. Inter-*

*national Management Services, Inc.,* 398 F.Supp. 307, 311–14 (S.D.N.Y.1975); *Mandelkorn v. Patrick,* 359 F.Supp. 692, 694–97 (D.D.C.1973). In *Glaros,* the court specifically declined to decide the propriety of a "conspiracy theory of personal jurisdiction," 628 F.2d at 682 n. 4, finding instead that the plaintiff had failed to connect the out-of-state defendants with specific acts committed within the forum state, *id.* at 682.

■■■ In order to survive a motion to dismiss for lack of jurisdiction, the plaintiff must make a prima facie showing that jurisdiction exists. 4 C. Wright & A. Miller, Federal Practice and Procedure § 1068 at 250 (1969). In the case before us, ALP Inc. has alleged by unverified complaint that a conspiracy existed. "[O]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan,* 686 F.2d 276, 282 n. 13 (5th Cir.1982) (citing *Black v. Acme Markets, Inc.,* 564 F.2d 681, 683 n. 3 (5th Cir.1977)). Here, however, defendants have countered by sworn affidavits that no conspiracy to defame existed. ALP Inc. has failed to controvert defendants' affidavits other than by conclusory allegations in its complaint and briefs.[2] ALP Inc. has not, for example, asserted by affidavit that defendants conspired to commit any overt act in Utah (or any other state) in furtherance of the conspiracy. *See Glaros,* 628 F.2d at 682 n. 4; *Mandelkorn,* 359 F.Supp. at 694–97 & nn. 4, 5. "Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir.1972). We therefore conclude that ALP has not met its threshold burden of establishing personal jurisdiction over Leeman and Van Rossum.

---

**2.** "On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof.... He need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient.... Conflicts between the affi-

davits submitted on the question of personal jurisdiction are thus resolved in favor of the plaintiff."
*Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir. 1982) (citations omitted). In this case, plaintiff offered no sworn statements to contradict the assertions in defendants' affidavits.

III.

CONCLUSION

In sum, we hold that the district court has jurisdiction over Hund and Bonaventura under Utah's long arm statute. ALP Inc.'s argument that the district court should take ancillary jurisdiction over the torts alleged to have been committed in New York and Texas (Counts Two and Three), and defendants' argument that any statements that were made concerned ALP B.V. and not ALP Inc., must wait for resolution in the trial court. ALP Inc.'s prima facie showing of jurisdiction will not prevent Hund and Bonaventura from again challenging the jurisdictional facts at trial, at which time ALP Inc. must prove the facts supporting jurisdiction by a preponderance of the evidence. *See, e.g., Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 58 (2d Cir.1981); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 & n. 4 (5th Cir.1973).

The case is accordingly affirmed as to defendants Leeman and Van Rossum, and reversed and remanded for further proceedings as to defendants Hund and Bonaventura.