**PACKERWARE CORPORATION,**
**Plaintiff,**

v.

**B & R PLASTICS, INC., Defendant.**

**No. 97–4184–RDR.**

United States District Court,
D. Kansas.

July 24, 1998.

Richard R. Johnson, Devon A. Rolf, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Plaintiff.

Duane A. Martin, Humphrey, Farrington & McClain, Independence, MO, for Defendant.

### *MEMORANDUM AND ORDER*

ROGERS, District Judge.

This is an action brought by plaintiff alleging claims of trademark infringement, trade dress infringement, and false designation of origin. Subject matter jurisdiction is asserted under 28 U.S.C. § 1338. This matter is presently before the court upon defendant's motion to dismiss for lack of personal jurisdiction. The court has heard oral argument on the motion and is now prepared to rule.

Plaintiff is a Kansas corporation. Defendant is a Colorado corporation. Plaintiff alleges that the defendant is wrongfully using a certain pitcher handle design as part of its

plastic dinnerware products. Plaintiff further alleges that the defendant is "doing business in this judicial district and is selling in this district products that are the subject of this complaint."

██ The standards for governing motions to dismiss for lack of personal jurisdiction are well-settled. Plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995). When the issue is raised prior to trial and decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. *Id.* The burden on the plaintiff is light. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). If the parties present conflicting affidavits, the court must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). A plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the defendant. *Id.* If the plaintiff succeeds in presenting a prima face case, the court may deny the motion to dismiss. *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 676 (1st Cir.1992). If the court denies the motion to dismiss based on the prima facie standard, the defendant may later raise again the issue of the exercise of personal jurisdiction over it. *Id.* Eventually, the plaintiff must establish by a preponderance of the evidence, either at a pretrial hearing or trial, that the exercise of personal jurisdiction over the defendant is proper. *Joint Stock "Trade House of Descendants of Peter Smirnoff" v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996).

In support of its motion, B & R has submitted the affidavit of its general manager, Darrell A. Kulzer. Mr. Kulzer states that B & R has never had any employees, agents, offices, bank accounts or telephone listings in Kansas. He further indicates that B & R has never conducted business in Kansas, has never been licensed to do business in Kansas, and has never solicited business in Kansas. He also states that B & R has never supplied or contracted to supply goods or services in Kansas, but does acknowledge that it does ship goods to an Arkansas-based corporation for delivery to a warehouse located in Kansas. He states that these shipments occur only one to three times a year. He further suggests that the goods involved in these shipments are not the subject of plaintiff's claims.

In support of its arguments, plaintiff has submitted the declarations of its national sales manager, Quintin Schonewise, and its president, Bruce J. Sims. Mr. Schonewise states that the pitcher manufactured by B & R that is the subject of this lawsuit is being sold at retail outlets in Kansas. He indicates that he personally purchased one on January 17, 1998 at an Albertson's store in Topeka, Kansas. Mr. Sims states that it is common knowledge that houseware products sold to Albertson's will be sold in many states, including Kansas. At the hearing on the instant motion, counsel for the plaintiff proffered to the court that he had purchased an alleged infringing pitcher prior to the hearing at an Albertson's store in Kansas. He noted that there were seven such pitchers on the shelf.

██ A court has personal jurisdiction over a defendant if the plaintiff has properly served the defendant and if the defendant has sufficient contacts with the forum to satisfy procedural due process. A defendant is amenable to process in a federal question case such as this one if the federal statute authorizes service of process on it or if it "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R.Civ.P. 4(k)(1)(A). Since 28 U.S.C. § 1338 does not authorize service of process on the defendant, the court must determine whether it is subject to the jurisdiction of the Kansas state court.

██ The Kansas long-arm statute provides that an individual submits to personal jurisdiction of the courts of the State of Kansas as to any cause of action arising from, *inter alia,* doing of the following: (1) transaction of any business within the state, and (2) commission of a tortious act within

the state. K.S.A. 60–308(b). Under Kansas law, the long-arm statute permits personal jurisdiction over a party to the extent allowed by the Constitution of the United States. *Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 740 P.2d 1089, 1092 (1987). Accordingly, the inquiry under the long-arm statute and the Constitution is essentially the same. *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990). The court shall therefore proceed to consider the constitutional issue. *Federated Rural Electric Insurance Corp. v. Kootenai Electric Cooperative,* 17 F.3d 1302, 1305 (10th Cir.1994).

The court must examine due process in light of the Fifth Amendment rather than the Fourteenth Amendment because this case arises under federal question jurisdiction. Nevertheless, the standards applied are the same as those in a Fourteenth Amendment analysis. *Akro Corp. v. Luker,* 45 F.3d 1541, 1544–45 (Fed.Cir.1995); *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir.1975).

■■■■ Under the due process clause of the Fourteenth Amendment, a defendant must have certain minimum contacts with the forum state such that the maintenance of this action does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction may be founded on either of two theories: general or specific jurisdiction. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 455 (10th Cir.1996). General jurisdiction is found when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction, on the other hand, exists when the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws,

and the claims against it arise out of those contacts. *Id.* at 414 n. 8, 104 S.Ct. 1868.

Plaintiff appears to suggest that specific jurisdiction is present here, but also asserts that general jurisdiction exists. Plaintiff contends that it has made "considerably more than a prima facie showing" of personal jurisdiction in this case. Plaintiff further argues, relying in part on *Dakota Industries,* that the court has jurisdiction over the defendant because the defendant has delivered its articles into the stream of commerce.

The defendant contends that the plaintiff has shown neither specific nor general jurisdiction here. The defendant argues that its act of placing this product in the stream of commerce is insufficient to satisfy the constitutional standard for personal jurisdiction.

**General Jurisdiction**

■■■ In *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996), the Tenth Circuit set forth the following factors to consider in determining the availability of general jurisdiction:

(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

Plaintiff points to the presence of general jurisdiction based solely upon the information supplied by the defendant that on one to three occasions each year the defendant ships goods to a warehouse in Kansas for an Arkansas-based corporation. No information is provided to the court about the volume of these shipments or duration of them.

The evidence of the defendant's contacts with Kansas for the purpose of general jurisdiction is virtually nonexistent. The record shows that the defendant maintains no offices or employees in Kansas, owns no property in Kansas, maintains no telephone listing in Kansas, and does no advertising for any of its products in Kansas. There is no evidence that any officer or employee of the defendant

has ever been in Kansas. The shipments noted by the plaintiff are simply insufficient to justify the assertion of general jurisdiction over the defendant. These shipments involve agreements with an Arkansas corporation, not a Kansas corporation, and they occur infrequently. The only contact with Kansas is that the goods are shipped to a Kansas warehouse. This is not the continuous and systematic activity necessary to justify a finding of general jurisdiction. *See Helicopteros Nacionales de Colombia,* 466 U.S. at 416, 104 S.Ct. 1868 (contacts with Texas not continuous and systematic even though defendant sent its CEO to Houston to negotiate contract with consortium; accepted checks drawn by its consortium on a Texas bank; purchased helicopters, equipment and training services from a Texas manufacturer; and sent personnel to manufacturer's facilities for training).

### Specific Jurisdiction

The Tenth Circuit utilizes a three-part test to determine the appropriateness of exercising specific jurisdiction: (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Rambo v. American Southern Insurance Co.,* 839 F.2d 1415, 1419 n. 6 (10th Cir.1988).

The key issue here is whether the defendant has "purposely availed" itself of the protections and benefits of Kansas law. Plaintiff relies upon the stream of commerce doctrine to support its argument that specific jurisdiction over the defendant exists. Plaintiff asserts that the defendant should be subjected to jurisdiction in Kansas because it placed its products into the stream of commerce with the expectation that they would ultimately be sold in Kansas.

Purposeful availment may occur by actions or even a single act for which the defendant " 'should reasonably anticipate being haled into court' in the forum state."

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* 471 U.S. at 474–75, 105 S.Ct. 2174 (emphasis in original) (citations omitted).

The stream of commerce theory of personal jurisdiction has been muddied by the opinions of the Supreme Court. In *World–Wide Volkswagen,* the Supreme Court examined the stream of commerce approach to personal jurisdiction. There, the plaintiffs were injured in an automobile collision in Oklahoma. Their car they had purchased in New York was hit from the rear and caught fire. In Oklahoma, they sued the German manufacturer, the importer, the regional distributor and the retail dealer from whom they had purchased the car. Although the manufacturer and importer did not contest jurisdiction, the regional distributor and dealer, both New York corporations, did. The Supreme Court, in reversing the decision of the Oklahoma courts, held that the exercise of personal jurisdiction over the New York corporations by an Oklahoma court would violate due process under the Fourteenth Amendment, despite the fact that they could have foreseen the presence in Oklahoma of vehicles they sold in New York. It reached this conclusion because the New York corporations directed no activity to Oklahoma. The Court stated:

[W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Okla-

homa law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

444 U.S. at 295, 100 S.Ct. 559.

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court held it would be a denial of due process to subject a Japanese manufacturer of a motorcycle tire valve assembly to jurisdiction in California for an indemnification claim asserted by the tire manufacturer, a Taiwanese corporation, in a product liability suit based on a California accident. The decision rested solely on balance of fairness grounds. Nevertheless, the justices attempted to shed some light on the purposeful availment requirement based upon the stream of commerce theory. This discussion has led to considerable confusion in the lower courts. In a plurality opinion, Justice O'Connor rejected the idea that simply placing a product in the stream of commerce, without more, is sufficient to satisfy the constitutional standard for personal jurisdiction. Justice O'Connor stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

480 U.S. at 112, 107 S.Ct. 1026.

Four justices, led by Justice Brennan, disagreed with the idea that "additional conduct" was needed for the application of the stream of commerce theory. Justice Brennan stated:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.... A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.

480 U.S. at 117, 107 S.Ct. 1026.

In the aftermath of *Asahi*, some courts have adopted the approach taken by Justice Brennan, designating it as the broad approach, while others have followed the approach taken by Justice O'Connor, designating it as the restrictive approach. Compare *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir.1993) and *Dehmlow v. Austin Fireworks*, 963 F.2d 941 (7th Cir. 1992) with *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994) and *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671 (1st Cir.1992). The Eighth Circuit has not taken a uniform approach with the result heavily dependent upon the facts of the particular case. Compare *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir.1994) with *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (8th Cir. 1990).

The Tenth Circuit has not spoken directly to the issue of the application of the stream of commerce theory in the area of personal jurisdiction. In *Federated Rural Electric Insurance Corp. v. Kootenai Electric Cooperative*, 812 F.Supp. 1139, 1144 (D.Kan.1993), aff'd, 17 F.3d 1302 (10th Cir.1994), this court noted Justice O'Connor's opinion in *Asahi*

and stated that "simply putting a product into the stream of commerce, without more, is not sufficient to satisfy the constitutional standard for personal jurisdiction even if the defendant is aware that the product will appear in the forum state."

The Tenth Circuit has, however, made clear that the mere fact of injury in the forum state due to allegedly tortious activities will not confer specific jurisdiction. *Far West Capital,* 46 F.3d at 1079. "Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposely availed itself of the benefits of the forum's laws." *Id.*

At least one case provides some significant guidance to the court in this case, *Dakota Industries.* In *Dakota Industries,* plaintiff, a South Dakota corporation and owner of the "Dakota" trademark, brought a trademark infringement suit against the defendant, a California competitor holding the trademark "Dakota Sportswear," in South Dakota. The defendant sought dismissal for lack of personal jurisdiction and the district court granted it. The evidence before the court showed that the defendant sold its clothes to major chains with outlets in South Dakota, but that it sold its clothes "mostly in New York and California." Defendant could not recall shipping any clothes directly to South Dakota. The defendant specifically stated that it does not market any clothes in South Dakota. Plaintiff discovered the defendant's clothes at several stores in South Dakota. On appeal, the Eighth Circuit reversed the trial court and concluded that it had personal jurisdiction over the defendant. The Court concluded that plaintiff's claim of trademark infringement, which showed that the defendant had used a mark owned by plaintiff in connection with the sale of goods in the state and that use was likely to cause confusion, fell within the ambit of South Dakota's long-arm statute conferring jurisdiction over any person involved in the commission of any act which results in the accrual of a tort within the state. 946 F.2d at 1388–89. The Eighth Circuit further found that personal jurisdiction over the defendant did not violate the due process clause of the Fifth Amendment.

*Id.* 946 F.2d at 1391. The Court noted that *Asahi* does not strongly support personal jurisdiction over the defendant, but that conclusion does not end the discussion. *Id.* 946 F.2d at 1390.

The Eighth Circuit, however, suggested that this case was closer to *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) than *Asahi. Id.* 946 F.2d at 1391. In *Calder,* the Supreme Court upheld jurisdiction over an editor and reporter of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. Plaintiff, an entertainer who resided in California, sued them for libel in California based on an article they produced. The Court concluded that California could assert personal jurisdiction over the nonresident defendants despite their lack of control over the marketing of the publication in California because their intentional actions were aimed at the forum state, they knew that the article would have a devastating impact on the plaintiff, and they knew that the brunt of the injury would be suffered in the state where the plaintiff lived and where the newspaper had its largest circulation. 465 U.S. at 789–90, 104 S.Ct. 1482.

The Eighth Circuit concluded as follows:

We recognize that some distinctions exist between the facts presented in this case and those in *Calder.* The allegedly wrongful act in *Calder* was perhaps more directly aimed at the plaintiff and her work in the forum state than may be true in this case. Moreover, the National Enquirer, which has its biggest circulation in California, 465 U.S. at 790, 104 S.Ct. at 1487, may have a stronger sales presence in the forum state than Dakota Sportswear does. These distinctions do not prevent the applicability of *Calder* to the facts of this case, however.

We believe that this case falls somewhere between *Asahi* and *Austad* on one hand and *Calder* on the other, but, in our view, it is somewhat closer to *Calder.* Like *Calder,* this case involves intentional tortious wrongdoing—namely, the use of the trademark with knowledge of the infringement.

In his affidavit, Industries' president Mackintosh stated that he had information

that Dakota Sportswear had twice been rejected in its attempts to register the trademark "Dakota." Sportswear did not challenge this sworn statement. Mackintosh further stated that Kerry Jolna admitted "expect[ing]" his phone call when Mackintosh contacted Sportswear's headquarters in January 1989. Dakota Industries also produced evidence that it sent a "cease and desist" letter to Sportswear in April 1989. All of this evidence supports Industries' contention that Sportswear knowingly and intentionally infringed on the trademark.

Moreover, in his deposition, Steven Jolna testified that he was "sure" that Dakota Sportswear sold to chains with retail outlets in South Dakota. The fact that some of the "passing off" occurred in South Dakota, along with the fact that Industries' principal place of business is in South Dakota, demonstrates that Sportswear's actions were uniquely aimed at the forum state and that the "brunt" of the injury would be felt there, as required by *Calder*. Under these circumstances, Sportswear "must 'reasonably anticipate being haled into court' " in South Dakota. *See Calder*, 465 U.S. at 790, 104 S.Ct. at 1487.

Our holding is further bolstered by the fact that there is at least some suggestion in the record that Sportswear directly shipped to South Dakota. Although Steven Jolna denied in an affidavit that Sportswear directly shipped to South Dakota, his earlier statement in the deposition that Sportswear's garments "may be shipped there" lends some support to Industries' assertion that Sportswear has made direct shipments to South Dakota. 946 F.2d at 1391.

Another case with some similarities to this case is *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994). In that case, the plaintiff, a Delaware corporation with its principal place of business in California, brought a patent infringement action in Virginia against the manufacturer, a Chinese corporation, and the importer, a New Jersey corporation, of allegedly infringing ceiling fans. The district court dismissed the action for lack of personal jurisdiction. The facts showed that the importer was selling the fans to an intermediary, Builder's Square, who was selling the fans in Virginia. The defendants' fans were discovered at various places in Virginia. On appeal, the Federal Circuit reversed. The Court concluded that personal jurisdiction could be exercised over the defendants in Virginia. The Federal Circuit determined that evidence that the manufacturer and the importer of the allegedly infringing ceiling fan purposely shipped the accused fan into Virginia through an established distribution channel satisfied the purposeful minimum contacts requirements of due process and supported exercise of personal jurisdiction under the stream of commerce theory in a patent infringement action allegedly arising from such activity. 21 F.3d at 1566.

■■■ The court is persuaded that the majority rule in stream of commerce cases is that some additional conduct is needed for the exercise of a personal jurisdiction over a tortfeasor. Our reading of *World–Wide Volkswagen* and *Asahi* is that the Supreme Court has not abandoned the *International Shoe* test as further articulated in *Burger King*. Notwithstanding the breadth of the stream of commerce language in *World–Wide Volkswagen*, the entire opinion indicated that the Court had not abandoned the notion that jurisdiction must rest on a person's activity deliberately directed toward the forum state. This remains the touchstone of the minimum contacts analysis. Both *Dakota Industries* and *Beverly Hills Fan* recognize this conclusion.

Having examined the requirements of the stream of commerce theory of personal jurisdiction, the court is persuaded that plaintiff has demonstrated a prima facie case here. As noted previously, the burden on the plaintiff at this point in the case is light. Plaintiff has demonstrated through evidence contained in its affidavits, and the reasonable inferences that can be drawn from that evidence, that products manufactured by the defendant were sold to Albertson's with the knowledge that they would ultimately be sold in Kansas. The additional conduct necessary for the use of the stream of commerce theory is sufficiently present here. Similar to *Dako-*

*ta Industries* and *Beverly Hills Fan*, plaintiff has adequately demonstrated that the defendant has directed the sale of its products to Kansas. The marketing of a product through a distributor who has agreed to serve as a sales agent in a forum state does constitute the additional conduct needed to establish minimum contacts. Accordingly, we hold that plaintiffs have met their prima facie burden of demonstrating the existence of sufficient facts to meet the tripartite specific jurisdiction test announced in *Rambo*. The defendant's motion to dismiss shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction (Doc. # 7) be hereby denied.

**IT IS SO ORDERED.**