DODSON INTERNATIONAL
PARTS, INC., Plaintiff,

v.

Phillip ALTENDORF, Jeffrey Altendorf, Circle H L.L.C., Resources Unlimited, Inc., Richard Moorhead, Mansfield Heliflight, Inc., and Eric Chase, Defendants.

No. 00–4134–SAC.

United States District Court,
D. Kansas.

Dec. 11, 2001.

Mark L. Bennett, Jr., J. Roger Hendrix, Penny R. Moylan, Bennett, Hendrix & Moylan, L.L.P., Topeka, KS, for Plaintiff.

Mark S. Gunnison, Robin E. Scully, II, Payne & Jones, Chtd., Overland Park, KS, Thomas E. Wright, Kevin James Grauberger, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Gary L. Franklin, Miller, Eggleston & Cramer, Ltd., Burlington, VT, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant Eric Chase's motion to dismiss for lack of personal jurisdiction or, in the alternative, to join Mansfield Heliflight, Inc.'s motion to dismiss count IX of the complaint.[1] (Dk.40). This is an unfair competition case in which the plaintiff, Dodson International Parts, Inc. ("Dodson") alleges that the defendants Phillip and Jeffrey Altendorf,[2] while Dodson employees, conspired with Mansfield Heliflight, Inc. ("MHI"), Eric Chase ("Chase") and others to unlawfully use and misappropriate solicitations to Dodson, as well as, Dodson's business and financial reputation, equipment, trade secrets and confidential information in order to divert Dodson's helicopter salvage business. In his motion, the defendant Chase denies ever having personal contacts with the State of Kansas and challenges the complaint as failing to allege sufficient activities on his part as to sustain personal jurisdiction. Dodson opposes the motion arguing that Chase, as the president and sole shareholder of MHI was the primary participant in the activities alleged here and that Chase is not entitled to the protection of the fiduciary shield doctrine having allegedly committed intentional torts against Kansas residents.

## GOVERNING LAW

The burden rests with Dodson to prove personal jurisdiction over the defendant Chase. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995). When the issue of personal jurisdiction is raised by a pretrial motion to dismiss supported by affidavit and other written materials, the plaintiff need only make a prima facie showing and may rely on the "well pled facts" of the complaint. *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992). Well-pled facts, as opposed to conclusory allegations, are accepted as true if uncontroverted by the defendant's affidavits. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1508–09

---

1. This part of the motion is moot, as the parties have since stipulated to the dismissal of count IX of the complaint. (Dk.51).

2. The Altendorfs and Circle H L.L.C., settled Dodson's claims against them, and the journal entry of judgment was signed by the court on December 6, 2000. (Dk.49).

(10th Cir.1995). "[T]he plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984) (citation omitted), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). To overcome a prima facie showing, the "defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The defendant may renew his jurisdictional challenge later, if the court denies the motion to dismiss using this prima facie standard. *Packerware Corp. v. B & R Plastics, Inc.*, 15 F.Supp.2d 1074, 1076 (D.Kan.1998). At that juncture, the plaintiff must then prove the critical jurisdictional facts by a preponderance of the evidence either at an evidentiary hearing or at trial.

"'Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by the due process clause, we proceed directly to the constitutional issue.'" *OMI Holdings, Inc.*, 149 F.3d at 1090 (quoting *Federated Electric Ins. Corp. v. Kootenai Electric Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994)). "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *OMI Holdings, Inc.*, 149 F.3d at 1090 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "Therefore, a 'court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.'" *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Tenth Circuit in *OMI Holdings* laid out the two-fold due process inquiry to be used:

First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted) (emphasis in the original). Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113, 107 S.Ct. 1026. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *See id.*

149 F.3d at 1091. These two components of the due process inquiry "'are related'" having "'both originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend "traditional notions of fair play and substantial justice."'" *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.)

(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), *cert. denied*, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996)). There is an "interplay" between them, "such that, 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.' " *Id.* The factors may bolster the reasonableness of exercising jurisdiction where there has been "a lesser showing of minimum contacts, and the factors "may be so weak" as to render the exercise of jurisdiction a violation of due process. *Id.*

## RELEVANT FACTS AND ALLEGATIONS

Chase avers that he resides in Burlington, Vermont. Chase denies that he has ever personally appeared or transacted business in Kansas or that he has any personal contacts, ties or relations to this forum. His only visit to Kansas was ten years ago as president of MHI when he visited the plaintiff's business and inspected a helicopter but transacted no business on behalf of MHI. Chase admits he is the sole shareholder of MHI, a corporation involved in the sale and service of helicopters and helicopter parts. Four full-time employees work for MHI.

In the plaintiff's verified complaint, it is alleged that the Altendorfs were in charge of Dodson's Helicopter Division which made salvage bids on damaged helicopters at the solicitation of owners and/or insurers and, if purchased, then repaired the helicopters or sold them or their parts. Dodson's primary source for solicitations were insurers with whom it had developed working relationships over the years based on Dodson's reputation and trust. Part of the Altendorfs' responsibilities were to receive the bid solicitations, inspect and determine the value of the helicopter, and then advise Dodson whether a bid should be submitted and the amount of any recommended bid. While still employed with Dodson, the Altendorfs conspired with other defendants, including Eric Chase to:

(1) unlawfully use and misappropriate solicitations submitted to Dodson, Inc., (2) unlawfully use Dodson, Inc.'s reputation in the aircraft and helicopter recovery and salvage business, (3) unlawfully use Dodson, Inc.'s financial reputation, (4) unlawfully use Dodson, Inc.'s equipment and (5) unlawfully appropriate Dodson, Inc.'s trade secrets and confidential information to formulate and facilitate submission of bids by Circle H, L.L.C. on damaged or downed helicopters that insurers and/or owners had solicited Dodson, Inc. to submit bids on and to recover and transport downed and or damaged aircraft or helicopters.

(Dk.1, ¶ 23). After inspecting the downed helicopters and advising Dodson not to submit a bid, the Altendorfs acting on behalf of the conspiracy would then submit a bid unauthorized by Dodson but made in such a way that the insurer or owner would believe the bid was coming from Dodson. (Dk.1, ¶ 25). The helicopter was then obtained by the conspiring defendants and profitably restored for resale or sold for parts. Based on these allegations, the complaint concludes as to the civil conspiracy count:

[T]he defendants agreed to and engaged in a course of conduct designed to, and which did, (1) engage in unfair competition against plaintiff, (2) tortiously interfere with plaintiff's prospective economic advantage, (3) defraud plaintiff, and (4) unjustly enrich defendants.

(Dk.1, ¶ 34). Count two of the complaint also alleges that the Altendorfs "knowingly and willfully disclosed ... trade secrets and confidential information belonging to

plaintiff to one or more of the other named defendants, their agents, employees, or representatives." (Dk.1, ¶ 41).

## ARGUMENTS

Pointing to his affidavit, Chase denies that he has any personal contacts with Kansas or that he personally directed any activities towards Kansas. Chase further contends that any actions on his part in the purchase or sale of helicopters involving Dodson or the Altendorfs were performed solely in his capacity as president of MHI. Relying on the fiduciary shield doctrine, Chase maintains his actions in this representative capacity do not provide the court with personal jurisdiction over him. Finally, Chase asserts that MHI is a viable corporation in good standing and that the plaintiff lacks any evidence or basis for arguing MHI is his alter ego.

Citing *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Application to Enforce Administrative Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir.1996), the plaintiff responds that Chase, by being the president and sole shareholder of MHI and the primary participant with regards to MHI's activities in Kansas, and by having used MHI to transact business and commit tortious activity in Kansas, is subject to personal jurisdiction here. The plaintiff also argues that Chase is not entitled to the fiduciary shield doctrine's protection, as the allegations against him include a conspiracy to "defraud plaintiff."

In reply, Chase construes *Calder* as applying the "effects test" which still necessitates Dodson's proof that Chase purposefully directed his activities to the forum state and that Chase has minimum contacts with the same. As for the fiduciary shield doctrine, Chase disputes that the plaintiff's complaint makes any fraud allegations against him sufficient under Rule 9(b) of the Federal Rules of Civil Procedure.

## ANALYSIS

"Purposeful availment may occur by actions or even a single act for which the defendant 'should reasonably anticipate being haled into court in the forum state." *Packerware Corp. v. B & R Plastics, Inc.*, 15 F.Supp.2d 1074, 1078 (D.Kan.1998) (quoting *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174). The Supreme Court described the rationale of this requirement in these terms:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, . . ., or of the "unilateral activity of another party or a third person,". . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. . . . Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. . . . So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (citations omitted).

It is true that "[j]urisdiction over the individual officers of a corporation, . . ., may not be obtained merely by accomplishing jurisdiction over the corporation." *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727 (10th Cir.1984) (citations omitted). It is also true that "a prima facie case of the jurisdictional fact of conspiracy or entry into the state" is sufficient to establish personal jurisdiction, particularly where it is alleged that the

defendant committed tortious acts injuring Kansas residents. *Id.* The plaintiff alleges a conspiracy claim against the defendant Chase. In *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.,* 710 F.2d 1449, 1454 (10th Cir.1983), the court considered the effect of a conspiracy claim and the allegations needed to sustain personal jurisdiction:

> The issue before us is whether the acts of a nonresident conspirator, which establish sufficient contacts with forum state to make that conspirator amenable to service under that state's long arm statute, are likewise sufficient to establish personal jurisdiction over nonresident coconspirators.

> ■ The First Circuit has noted that "some courts have recognized a 'conspiracy theory of personal jurisdiction,' whereby jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants.... But, to sustain jurisdiction over an out-of-state co-conspirator these courts required something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and of which the out-of-state co-conspirator was or should have been aware."

*Glaros v. Perse,* 628 F.2d 679, 682 (1st Cir.1980)....

> ... In the case before us, ALP Inc. has alleged by unverified complaint that a conspiracy existed.... Here, however, defendants have countered by sworn affidavits that no conspiracy to defame existed. ALP Inc. has failed to controvert defendants' affidavits other than by conclusory allegations in its complaint and briefs. ALP Inc. has not, for example, asserted by affidavit that defendants conspired to commit any overt act in Utah (or any other state) in furtherance of the conspiracy.... "Mere allegation of conspiracy, without some sort of prima facie evidence factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir.1972). We therefore conclude that ALP has not met is threshold burden of establishing personal jurisdiction over Leeman and Van Rossum.

710 F.2d at 1454. When the conspiracy and its overt acts are pleaded with particularity, "a co-conspirator's contacts with the forum may be attributed to other conspirators for jurisdictional purposes." *National Union Fire Ins. Co. of Pittsburgh v. Kozeny,* 115 F.Supp.2d 1231, 1237 (D.Colo. 2000) (citations omitted), *aff'd,* 2001 WL 1149327, 19 Fed.Appx. 815 (10th Cir.2001).

The plaintiff's complaint is verified and includes specific allegations of a conspiracy between the defendant Altendorfs, who are Kansas residents, and other defendants, in particular, the defendant Eric Chase. The complaint lays out what actions were taken in Kansas in furtherance of the conspiracy. Specifically, the conspiracy entailed the Kansas defendants misappropriating the solicitations to Dodson and using them with Dodson's trade secrets and confidential information to formulate and submit bids on these solicitations in order to divert business opportunities from Dodson. The complaint also alleges that in furtherance of the conspiracy, the defendant Altendorfs misrepresented to Dodson the condition of the damaged helicopters on which solicitations were received. The defendant Altendorfs then submitted bids and purchased the damaged helicopter for the benefit of co-conspirators who would restore the aircraft or salvage its parts for

sale.[3]

■ The court is satisfied that the plaintiff's verified complaint makes a prima facie showing of a conspiracy in which co-conspirators who are Kansas residents committed tortious acts in Kansas in furtherance of a conspiracy that injured a Kansas resident. The Altendorfs' misappropriation of solicitations received in Kansas, their misrepresentations to the plaintiff in Kansas, and their misuse of the plaintiff's confidential information in fashioning bids and conducting negotiations for co-conspirators are substantial acts in furtherance of the conspiracy of which the defendant Chase knew or should have known. The plaintiff has carried its threshold burden of establishing that the conspiracy of which the defendant Chase was a member involved intentional and allegedly tortious activities "expressly aimed" at the forum state. *Calder,* 465 U.S. at 789, 104 S.Ct. 1482. These circumstances are such that Chase must reasonably anticipate being haled into court in Kansas to answer for the harm done to Dodson by this conspiracy.

■ A defendant's status as an officer or employee "does not somehow insulate ... [him] from jurisdiction." *Calder,* 465 U.S. at 790, 104 S.Ct. 1482. The fiduciary shield doctrine, however, may protect defendants against claims based on nothing more than the defendant's status as a corporate officer or employee. *Lewis v. Fresne,* 252 F.3d 352, 359 n. 6 (5th Cir.

2001). When the claim alleges or necessarily involves the personal interests or motives of the individual defendant, the fiduciary shield doctrine does not apply. *Id.* (corporate officer made misrepresentation so that corporation would receive funds needed to keep it "afloat until the private placement"). For that matter, when the defendant is the "primary participant[ ] in an alleged wrongdoing intentionally directed at a ... [forum] resident, ... jurisdiction over ... [him] is proper on that basis." *Calder,* 465 U.S. at 790, 104 S.Ct. 1482. The verified complaint alleges the defendant Chase himself was a member of the conspiracy and participated in the wrongdoing. As the sole shareholder of MHI, the defendant obviously had a personal motive or interest in activities that profited MHI. From the verified complaint, one can infer that the Chase was the primary participant acting in furtherance of his own interests and those of MHI. *See Hardin Roller Corp. v. Universal Printing Machinery, Inc.,* 236 F.3d 839, 842–43 (7th Cir.2001) ("As the principal residual claimant to Universal's [corporation's], Yukich [individual] did not need — ... — protection from individual-capacity actions in jurisdictions where Universal itself was exposed to suit." (citation omitted)); *Wempe v. Sunrise Medical HHG, Inc.,* 61 F.Supp.2d 1165, 1171 n. 2 (D.Kan.1999) (using the primary participant holding in *Calder* to find personal jurisdiction over the corporate agent). The fiduciary shield doctrine does not in-

---

**3.** In its proposed amended complaint attached to its recent motion to amend, the plaintiff Dodson alleges *inter alia,* that the defendant Altendorfs "entered into joint ventures" with others including the defendant Chase, that the defendant Chase knew or should have known the plaintiff was the intended recipient or sender of a communication regarding a solicitation, that the defendant Chase made a bid on a damaged helicopter which purported to be in cooper-

ation with the plaintiff but which was made without the actual knowledge or approval of the plaintiff's responsible officers, and that the defendant Chase issued checks or made wire transfers on these transactions to the Altendorfs while knowing that the plaintiff employed the Altendorfs full-time. (Dk.102). The court realizes this is only a proposed filing that is not verified. On the other hand, none of these allegations is contrary to what is found in Chase's affidavit.

**1256**

sulate Chase from this court's personal jurisdiction.

 In deciding whether the exercise of jurisdiction is reasonable here, the court considers: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Intercon, Inc. v. Bell Atlantic Internet Solutions,* 205 F.3d 1244, 1249 (10th Cir. 2000) (citation omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. The conspiracy of which the defendant Chase was a member was purposefully directed at a Kansas corporation.

Other than noting his residency in Vermont and his lack of personal contacts with Kansas, the defendant Chase offers nothing in proof of the burden he faces in defending this suit here. There is nothing to suggest this burden would be extraordinary considering he shares the same counsel and interests as the defendant MHI which he owns. Kansas has a " 'manifest interest' in providing a forum in which its residents can seek redress from intentional injuries caused by out-of-state actors." *Intercon, Inc.,* 205 F.3d at 1249 (citation omitted). If forced to sue Chase separately in a distant forum, the plaintiff's chances for obtaining convenient and effective relief would be diminished. Kansas plainly is the most efficient place to litigate this dispute.

In sum, the court finds that the plaintiff has made a threshold showing that the defendant as a member of the alleged conspiracy has sufficient ties with Kansas as to permit the constitutional exercise of personal jurisdiction over him. Should the defendant renew his jurisdictional challenge later, the plaintiff will be required to prove the same by a preponderance of the evidence.

IT IS THEREFORE ORDERED that Eric Chase's motion to dismiss for lack of personal jurisdiction (Dk.40) is denied.